IN RE APPLICATION OF CITY OF GRAND ISLAND, NEBRASKA.
CITY OF GRAND ISLAND, NEBRASKA, APPELLEE, V. SOUTHERN
NEBRASKA RURAL PUBLIC POWER DISTRICT, APPELLANT.
527 N.W.2d 864

Filed March 3, 1995.   No. S–93–511.

Kenneth H. Elson for appellant.

Keith Sinor, Grand Island City Attorney, for appellee.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae Norris Public Power District.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

FAHRNBRUCH, J.

Southern Nebraska Rural Public Power District (Southern) claims that the Nebraska Power Review Board (Board) erred when it denied Southern compensation for a part of Southern's power service area which was transferred to the City of Grand Island (City).

We affirm the denial of compensation to Southern.

This appeal was originally filed with the Nebraska Court of Appeals. It was removed to this court pursuant to our authority to regulate the caseloads of the appellate courts.

## STATEMENT OF THE FACTS

Ponderosa Lake Estates subdivision was platted as an addition to the City. On November 7, 1991, the subdivision was included within the incorporated limits of the City. A portion of the subdivision was located within Southern's power service area.

On October 27, 1992, the City filed an application with the Board to have that portion of the subdivision located within Southern's power service area transferred to the City's power service area. On April 21, 1993, a hearing was held before the Board. Southern conceded the City's right to have the annexed property in Southern's power service area transferred to the City's power service area. However, Southern contended that

the City must pay compensation for the taking of the service area transferred to the City.

It is undisputed that Southern has no powerlines, facilities, or customers located within the area annexed by the City. Nevertheless, Southern contends that it should be compensated for the loss of its right to serve such area. C. J. Hoke, Southern's general manager, testified that Southern, for the next 10 years, should receive 25 percent of the gross revenue the City will receive from providing electrical service to the inhabitants in that portion of the subdivision transferred to the City. This request was based upon a formula developed by the South Dakota Legislature.

The Board granted the City's request to transfer Southern's service area in the subdivision to the City and denied Southern's request for compensation. Southern timely filed this appeal.

## ASSIGNMENTS OF ERROR

Restated, Southern claims that the Board acted arbitrarily and unreasonably (1) in refusing to determine the total economic impact on Southern by the transfer of a portion of Southern's service area to the City, and (2) in failing to establish the amount of compensation the City should pay to Southern for the loss of Southern's right to serve the power needs within the area transferred to the City.

## STANDARD OF REVIEW

A decision of the Nebraska Power Review Board will be affirmed on appeal if it is supported by evidence in the record and is not arbitrary, capricious, or otherwise illegal. *In re Application of City of Lexington*, 244 Neb. 62, 504 N.W.2d 532 (1993).

## ANALYSIS

The first of Southern's assignments of error claims that the Board acted arbitrarily and unreasonably in refusing to determine the total economic impact on Southern by the transfer of the portion of Southern's certified service area to the City.

Southern argues that even though it had no facilities or customers located within the portion of property annexed by the City, under Neb. Rev. Stat. § 70-1010(2) (Reissue 1990), it is

entitled to compensation for the taking of its loss of right to serve within such area. Essentially, Southern is claiming that the Board misinterpreted the applicable statutes.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994); *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994). When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994).

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *No Frills Supermarket, supra*; *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994).

The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993). See *Grady, supra*.

The City is a municipality that owns and operates its own electric system that serves the inhabitants of the municipality. The City has a statutory right to serve areas within its corporate limits, which includes newly annexed areas. Neb. Rev. Stat. § 70–1008(2) (Reissue 1990) provides in part: "A municipally owned electric system, serving such municipality at retail, shall have the right, upon application to and approval by the [Nebraska Power Review Board], to serve newly annexed areas of such municipality."

Neb. Rev. Stat. § 16–120 (Reissue 1991) *requires* a city to furnish city services to newly annexed areas within 1 year after

annexation. Section 16–120 provides:

> The inhabitants of territories annexed to such city shall receive substantially the services of other inhabitants of such city as soon as practicable. Adequate plans and necessary city council action to furnish such services shall be adopted not later than one year after the date of annexation, and such inhabitants shall be subject to the ordinances and regulations of such city, except that the one–year period shall be tolled pending final court decision in any court action to contest such annexation.

Thus, Nebraska statutes grant a right to, and impose an obligation upon, a municipal electric system to furnish electric service to the inhabitants within the corporate limits of the municipality and the territory it annexes.

Under § 70–1008, a municipality is authorized to acquire the electric distribution facilities and customers of any other supplier within an area annexed by the municipality. If the municipality wishes to make such acquisition, then it must do so in accordance with the criteria set forth in § 70–1010(2) and make payment for the acquired facilities and customers within 1 year after annexation. Section 70–1008 does not require the municipality to make payment for the value of a rural power district area transferred to a city when there are no facilities or customers for a city to acquire.

If the parties to a transfer of customers and facilities cannot agree upon the value of the transfer, the Board shall determine the total economic impact on the selling supplier. Section 70–1010(2) provides:

> *In the event of a proposed transfer of customers and facilities from one supplier* to another in accordance with this section or section 70–1008 or 70–1009, the parties shall attempt to agree upon the value of *the certified service area and distribution facilities and customers being transferred.* If the parties cannot agree upon the value, then the board shall determine the total economic impact on the selling supplier and establish the price accordingly based on, but not limited to, the following guidelines: *The supplier acquiring the certified service area, distribution facilities, and customers shall purchase the electric*

*distribution facilities of the supplier located within the affected area, together with the supplier's rights to serve within such area, for cash consideration* which shall consist of (a) the current reproduction cost if the facilities being acquired were new, less depreciation computed on a straight–line basis at three percent per year not to exceed seventy percent, plus (b) an amount equal to the nonbetterment cost of constructing any facilities necessary to reintegrate the system of the supplier outside the area being transferred after detaching the portion to be sold, plus (c) an amount equal to two and one–half times the annual revenue received from power sales to existing customers of electric power within the area being transferred . . . . *After the board has determined the price in accordance with such guidelines,* the acquiring supplier may acquire such distribution facilities and customers by .payment of the established price within one year of the final order.

(Emphasis supplied.)

Southern contends that § 70–1010(2) imposes a duty upon the Board to determine the compensation the City should pay Southern for loss of its right to provide electrical service within the area transferred. Section 70–1010(2) clearly provides that the Board shall determine economic impact on the selling supplier when a proposed *transfer of customers and facilities* from one supplier to another is involved and the parties are unable to agree upon the value of the certified service area, distribution facilities, and customers being transferred. In the present case, there were no transfers of customers or facilities from Southern to the City because Southern had none. The area transferred to the City was undeveloped.

In this case, Southern urged the Board to adopt South Dakota's legislative formula to determine economic impact on Southern because of the transfer of its undeveloped area to the City. It would be improper for the Board to do so because South Dakota's formula has not been adopted by Nebraska's Legislature. Having determined that the Board had no statutory authority to determine the economic impact of the transfer upon Southern, the Board could not have erred in failing to establish

the cash consideration to be paid by the City to Southern.

### CONCLUSION

In the case at bar, the Board (1) acted properly in transferring that portion of the subdivision located in Southern's power service area to the City, and (2) did not act arbitrarily, capriciously, or illegally in declining to award Southern compensation on account of the transfer.

AFFIRMED.