IN RE ADOPTION OF KASSANDRA B. AND NICHOLAS B.
TIMOTHY L. SAVAGE AND KAREN M. SAVAGE, APPELLANTS, V.
MARTIN GOMEZ, INTERVENOR–APPELLEE.

540 N.W.2d 554

Filed December 8, 1995.    No. S-94-101.

Herbert J. Elworth and Roger K. Johnson, of Casey, Elworth & Johnson, for appellants.

Catherine Mahern, of Creighton Legal Clinic, for intervenor–appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Martin Gomez, the father of Kassandra B. and Nicholas B., children born out of wedlock, contests their adoption by appellants, Timothy L. Savage and Karen M. Savage. The birth mother, Anita Bechtold, had given custody of the two children to an adoption agency, K.E.S.I.L., for the purpose of adoption. Bechtold falsely told K.E.S.I.L. that she did not know the identity of the children's father(s). K.E.S.I.L. placed the children in the Savages' home, and the Savages eventually filed an adoption petition in the county court for Cass County. Gomez discovered the pending adoptions, entered his

opposition, and sought custody of the children. After a hearing, the county court terminated Gomez' and Bechtold's parental rights and placed custody of the children in K.E.S.I.L. for placement with a suitable adoptive family. No adoption decree was either entered or denied. The district court for Cass County reversed the county court's order terminating Gomez' rights. The Court of Appeals affirmed the district court and granted Gomez immediate custody of the children because Bechtold had relinquished her parental rights. We granted further review. Our review of the record reveals that the county court was without statutory authority to exercise subject matter jurisdiction so as to entertain the adoption proceedings in which parental rights were terminated. A judgment entered by a court which lacks the authority to exercise subject matter jurisdiction is void. We therefore vacate the orders of the county court terminating parental rights and placing custody in K.E.S.I.L. and remand the cause to the Court of Appeals with directions to remand to the district court for further remand to the county court to dismiss.

## BACKGROUND

Gomez and Bechtold met when they were teenagers. They began dating, and on July 23, 1982, they had a child, Jamie. Although they never married, Gomez and Bechtold began living together in 1984. The couple had two more children, Kassandra, born May 4, 1986, and Nicholas, born July 17, 1989. Gomez was not identified as the father on any of the children's birth certificates, but the parties have stipulated that he is the biological father.

In or about 1986, Gomez left Bechtold and the then two children for about 6 months and moved to another state. During that time, he provided no support for his children and did not contact them or their mother. However, Gomez and Bechtold reunited in December 1987.

During the time that Gomez and Bechtold lived together, both worked at various jobs with some periods of unemployment. Gomez partially supported Bechtold and the children with his wages, unemployment income, and a workers' compensation settlement. Bechtold attended cosmetology school

for 14 months and began a career in hairstyling in 1989.

Gomez and Bechtold separated on August 10, 1990, after Bechtold asked Gomez to leave. Gomez maintained some contact with his children but provided little financial support. During 1990, Gomez gave Bechtold about $400 to $500 and earned approximately $7,500. Gomez talked with his children once or twice a week by phone and took them for occasional excursions and visits.

Gomez has a history of alcohol abuse and has been arrested several times for driving while under the influence and for disorderly conduct. He has admitted to smoking marijuana in the past.

Bechtold testified that during the summer of 1991, she was having a difficult time financially. Bechtold did not think she could take care of the children by herself, and she concluded that she could not rely on Gomez for any financial support. Bechtold decided to place the two younger children for adoption.

Bechtold contacted an adoption agency in California and learned that she needed Gomez' consent before the children could be placed for adoption. Bechtold discussed adoption with Gomez, but he refused to give his consent.

In October 1991, Bechtold contacted the K.E.S.I.L. adoption agency. Knowing she needed Gomez' consent, Bechtold lied to K.E.S.I.L. and stated that she did not know the identity of the children's father(s). Bechtold placed Kassandra and Nicholas in K.E.S.I.L.'s custody on October 19. On November 2, Bechtold signed relinquishment forms for each child.

On the same day that Bechtold signed the relinquishment forms, Kassandra and Nicholas were placed with appellants, the Savages. The Savages signed a "Child Acceptance Agreement," in which they acknowledged that K.E.S.I.L. had advised them that "until finalization in Nebraska Courts, this adoptive placement is one they term 'legal risk' [sic] because the birth fathers of the children have not been named, identified on the child's birth records or signed a relinquishment of parental rights." K.E.S.I.L. was paid $7,500 by the Savages.

Gomez learned on November 11, 1991, that the two children had been placed for adoption, when he telephoned Bechtold to

discuss the children's attendance at his upcoming wedding. Bechtold told Gomez that she had placed the children for adoption but refused to give him any further information. Gomez asked a friend of his mother, an attorney, for advice. At the attorney's suggestion, Gomez filed two "Notice of Intent to Claim Paternity" forms with the Department of Social Services (DSS) on November 12, 1991. It was not until July 1992 that an employee of K.E.S.I.L. informed the Savages of the existence of Gomez and his paternity claims.

On October 20, 1992, the Savages filed a petition for adoption in the county court for Cass County. In their petition, the Savages stated that Bechtold had relinquished the children to the care, custody, and control of K.E.S.I.L. As required by Neb. Rev. Stat. § 43–102 (Reissue 1988), the Savages attached to the petition consents from K.E.S.I.L. and the mother. Their petition further alleged that a notice of intent to claim paternity was filed with DSS by Gomez claiming paternal rights to the children. Their petition further alleged that the claim of paternity should not be recognized by the court pursuant to the provisions of Neb. Rev. Stat. § 43–104.02 (Reissue 1993) for the reason that such claim is barred by not having been filed within 5 days after the birth of each of the children.

By order of the county court, Gomez received notice of the Savages' adoption petition. Gomez filed a motion in opposition to the adoption and a request for custody citing Neb. Rev. Stat. § 43–104.06 (Reissue 1993). On July 20 and 21, 1993, the county court conducted a hearing regarding the adoption petitions and Gomez' opposition.

By its order dated August 23, 1993, the county court held Bechtold's parental rights had been terminated by reason of her relinquishments. The county court, referring to Neb. Rev. Stat. § 43–292(2), (3), and (4) (Reissue 1993), of the Nebraska Juvenile Code, concluded Gomez was not a fit parent and terminated Gomez' parental rights. The county court placed custody of the children with K.E.S.I.L. for suitable placement with an adoptive family.

Gomez appealed to the district court for Cass County. The district court held that the county court was without jurisdiction to consider termination of Gomez' parental rights under the

juvenile code. The district court reversed the holdings of the county court and remanded the matter for further proceedings.

The Savages appealed to the Nebraska Court of Appeals. *In re Adoption of Kassandra B. & Nicholas B.*, 3 Neb. App. 180, 524 N.W.2d 821 (1994). That court also concluded that the county court was without jurisdiction to terminate Gomez' parental rights under the juvenile code. Further, the Court of Appeals held that no adoption could be decreed by the county court because none of the provisions found in Neb. Rev. Stat. § 43–104 (Reissue 1993) that obviate the need to obtain parental consent for adoption were met. However, the Court of Appeals held that the district court erred in its mandate to the county court. Rather than remanding for further proceedings, the Court of Appeals held that the law clearly entitled Gomez, who was not an unfit parent, to the immediate custody of his children. We granted the Savages' petition for further review.

During the pendency of this action, Kassandra and Nicholas have remained in the care and custody of the Savages, apparently under an arrangement with K.E.S.I.L.

## ASSIGNMENTS OF ERROR

The Savages assert that the Court of Appeals erred (1) in rejecting the factual finding of the county court that Gomez was unfit; (2) in holding that §§ 43–104.02 through 43–104.06 create jurisdiction to terminate parental rights in adoption cases for only those unwed fathers who file their notices of paternity with DSS within the prescribed 5 days of the birth of the child; (3) in refusing to apply §§ 43–104.02 through 43–104.06 to Gomez' request for custody when Gomez himself sought relief under those statutes; and (4) in ordering that the children be immediately restored to Gomez, thus denying the children the protection of Neb. Rev. Stat. § 43–111.01 (Reissue 1993), applicable when an adoption is denied.

Gomez challenges the constitutionality of § 43–111.01 when applied to a father who has established a parental bond with his children, because Gomez asserts that the statute ignores the parental preference doctrine.

## STANDARD OF REVIEW

Statutory authority to exercise subject matter jurisdiction may

be raised sua sponte by a court. *Jones v. State, ante* p. 158, 532 N.W.2d 636 (1995); *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994).

## ANALYSIS

In the biblical tale of King Solomon, when two women argued over a baby, Solomon ordered the child cut in two. Solomon knew that the woman who begged for the baby's life was the true mother and gave her the baby. "When all Israel heard about the decision the king had rendered, they respected the king because they saw that the wisdom of God was in him to administer justice." 1 Kings 3:28. Solomon's decision was not constrained by statutes and precedent. In Nebraska, the matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed. *Kellie v. Lutheran Family & Social Service*, 208 Neb. 767, 305 N.W.2d 874 (1981); *In re Petition of Ritchie*, 155 Neb. 824, 53 N.W.2d 753 (1952).

Our analysis is controlled by the adoption statutes codified at chapter 43, article 1, of the Nebraska Revised Statutes. We note that these statutes have been substantively changed by 1995 Neb. Laws L.B. 712, but the changes are not applicable to this case. We hold that the adoption petition failed to comply with adoption statutes and therefore the county court lacked authority to exercise its subject matter jurisdiction over the proceeding.

In summary, our analysis begins with the premise that consent of a biological parent to the termination of his or her parental rights is the foundation of our adoption statutes. Section 43–104(3) provides that no adoption shall be decreed unless the adoption petition is accompanied by the consent of both parents, if living, unless the need for parental consent is rendered unnecessary by certain exceptions. Section 43–102 mandates that when an adoption petition is filed, all consents required by § 43–104 must be attached to the petition. Neb. Rev. Stat. § 43–105 (Reissue 1993) states that when parental consent cannot be given as provided in § 43–104(3), substitute consent shall be given by the guardian or guardian ad litem of the child. The Savages' petition to adopt the children was not accompanied

by Gomez' consent or a substitute consent executed by the guardian ad litem. The lack of these consents is a jurisdictional defect which precluded the county court's power to exercise its authority over the adoption proceeding.

At a hearing on January 28, 1993, regarding Gomez' motion in opposition of adoption and request for custody, Gomez challenged the Savages' petition for the reasons that the required consents from DSS were lacking. There is no record regarding the outcome of this challenge. However, parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994); *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994).

Section 43-102 demands that certain consents or substitute consents be filed with the adoption petition.

> [A]ny person . . . desiring to adopt a minor child . . . shall file, in the county court . . . a petition for adoption, signed and sworn to by the person or persons desiring to adopt, together with the consent or consents required by section 43-104 . . . and the certificates required by sections 43-104.02 to 43-104.06 or the documents required by section 43-104.07.

Section 43-104(3) provides that consent to an adoption is required from

> both parents if living . . . of a child born in lawful wedlock, or, subject to sections 43-104.02 to 43-104.06, the mother of a child born out of wedlock, except that consent shall not be required of any parent who (a) has relinquished the child for adoption by a written instrument, (b) has abandoned the child for at least six months . . . (c) has been deprived of his or her parental rights to such child by the order of any court of competent jurisdiction, or (d) is incapable of consenting.

When a biological parent's consent is not required by § 43-104(3), the prospective adoptive parents must obtain substitute consent. Section 43-105 states that

when consent cannot be given as provided in subdivision (3) of section 43–104, consent shall be given by the guardian or guardian ad litem of such minor child appointed by a court, which consent shall be authorized by the court having jurisdiction of such guardian or guardian ad litem.

The Savages filed their petition to adopt the children in the county court on October 20, 1992. The relinquishment documents signed by Bechtold were attached to the petition as exhibits "A" and "B" and were incorporated by reference. The Savages' petition stated that the relinquishment documents contained authority for K.E.S.I.L. to authorize the adoption. Also attached to the petition were two consents to the adoptions executed by K.E.S.I.L. No consents from Gomez or substitute consents were attached to the Savages' adoption petition.

A court must give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense and, if possible, discover the Legislature's intent from the language of the statute itself. *In re Interest of Powers*, 242 Neb. 19, 493 N.W.2d 166 (1992). With the plain language of §§ 43–102, 43–105, and 43–104.04 before us, we must hold that the Savages' failure to file Gomez' consents or substitute consents with their adoption petition is a procedural defect that is jurisdictional in nature. This result is also indicated by prior decisional law.

In *Klein v. Klein*, 230 Neb. 385, 431 Neb. 646 (1988), a custodial father filed an application in a dissolution action, seeking a district court's consent to the adoption of his child by his new wife for the reason that the birth mother had abandoned the child. The district court's consent to the adoption was required under § 43–104(2) because it had jurisdiction over the child by virtue of the divorce proceedings. The birth mother appealed from the order of the district court granting its consent to the adoption, and the issue was raised regarding whether her appeal was from a final or an interlocutory order.

In *Klein*, we stated that the district court's order granting consent to the adoption permitted the county court to entertain the adoption proceedings. In *Smith v. Smith*, 242 Neb. 812, 497

N.W.2d 44 (1993), we again stated that a district court's consent to an adoption is needed under § 43–104(2) and that the lack of the district court's consent prevents the county court from taking jurisdiction over the case. Without requisite consents, a county court lacks authority, or jurisdiction, to entertain an adoption proceeding. This conclusion is consistent with our analysis in *Hiatt v. Menendez*, 157 Neb. 914, 62 N.W.2d 123 (1954). In *Hiatt*, we stated that an irregularity and a failure of compliance with the statutory requirements of a proper petition for adoption may defeat the jurisdiction of the county court. See, also, *Decoste v. City of Wahoo, ante* p. 463, 534 N.W.2d 760 (1995) (holding that statutory prerequisites must be met before court exercises its subject matter jurisdiction).

Section 43–104 states that no adoption can be decreed unless the petition is accompanied by consents or relinquishments which indicate that parental rights have already been extinguished. The fact that the statute is phrased in the past tense indicates that the requisite consents should be obtained prior to filing the petition.

It may be argued that Gomez' consent to the adoptions was not needed because the children were born out of wedlock and he failed to timely claim paternity under the provisions of §§ 43–104.02 through 43–104.06. In essence, those sections provide that a father of a child born out of wedlock may prevent an adoption from proceeding with the mother's sole consent only if he files a notice of intent to claim paternity within 5 days of the child's birth. In fact, the Savages' adoption petition stated that

> a notice of intent to claim paternity has been filed with the Nebraska Department of Social Services by a Martin Gomez claiming paternal rights to the minor children herein involved. The claim of paternity should not be recognized by the Court pursuant to the provisions of Section 43–104.02 for the reason that such claim is barred by not having been filed within five (5) days after the birth of each of the children, the claimant having at all times full knowledge of the birthdays of each of said children.

We have previously held that the 5-day filing requirement is

not applicable to a father whose child is no longer a newborn, who has already established strong ties, and who has acknowledged and supported the child. *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987). We need not, indeed cannot, decide whether Gomez is such a father because we hold that substitute consent must have been obtained even if Gomez was subject to the provisions of §§ 43–104.02 through 43–104.06.

The allegations in the Savages' petition that Gomez' consent was not required because he had not filed notice of intent to claim paternity within 5 days of his children's births are questionable substitutes for the statutory requirement that an adoption petition be filed with the requisite consents. Although it is true that an unwed father's consent is not needed if he fails to claim paternity under § 43–104.02, § 43–104.04 states that

> the Department of Social Services shall supply, a certificate that no notice of intent to claim paternity has been filed with the department and the filing of such certificate pursuant to section 43–102 shall eliminate the need or necessity of a consent or relinquishment for adoption by the natural father of such child.

No such certificate was filed with the Savages' petition. Therefore, the county court also lacked jurisdiction for this reason.

The consent filing requirements imposed by § 43–102 are not mere procedural matters which can be easily disregarded or waived. Children are not legally free for adoption unless both biological parents consent or one of the statutory exceptions to the need for their consent has been met. As a practical matter, there is little sense in filing a petition to adopt a child unless there is good reason to believe that the adoption can proceed. Section 43–102 ensures that prospective adoptive parents gather the necessary consents before filing their petition.

## CONCLUSION

The county court lacked statutory authority to exercise subject matter jurisdiction to entertain this proceeding because Gomez' consent or its substitute was lacking.

When a lower court lacks the authority to exercise its subject

matter jurisdiction so as to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995); *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

A judgment entered by a court which lacks subject matter jurisdiction is void. It is the longstanding rule in Nebraska that such a void judgment may be raised at any time in any proceeding. *Bradley v. Hopkins*, 246 Neb. 646, 522 N.W.2d 394 (1994); *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

Our disposition of this case makes it unnecessary to address the issue of the validity of Bechtold's relinquishments, the standing of the Savages, the authority of the county court to terminate parental rights in adoption proceedings, and the parties' assignments of error.

We vacate the orders terminating parental rights and placing custody in K.E.S.I.L. The cause is remanded to the Court of Appeals with directions to remand to the district court for further remand to the county court for dismissal.

REMANDED WITH DIRECTIONS TO DISMISS.

CONNOLLY, J., dissenting.

## ANALYSIS OF MAJORITY OPINION

### LACK OF CONSENT

The majority holds that the lack of Gomez' consent to the adoption, in accordance with § 43–104, constituted a lack of jurisdiction by the county court. The majority therefore holds that the judgment was void. Section 43–104(3) specifies who must consent to an adoption. The classes from whom consent must be received are three: "both parents if living, the surviving parent of a child born in lawful wedlock, *or*, subject to sections 43–104.02 to 43–104.06, the mother of a child born out of wedlock . . . ." (Emphasis supplied.) § 43–104(3). If the Legislature intended that biological fathers of children born out of wedlock must give consent to adoption, then the statute could simply state that consent must be given by both parents if living. Section 43–104(3) does clearly provide an alternative, however,

and directs the reader to §§ 43-104.02 through 43-104.06. Substitute consent as provided in § 43-105 is not applicable in this case.

In its holding, the majority refuses to consider §§ 43-104.02 through 43-104.06 as controlling in this case. After a careful reading of § 43-104(3), one must look to §§ 43-104.02 through 43-104.06 when consent is lacking from the unwed biological father.

Section 43-104.02 provides in pertinent part:

(1) Relinquishment or consent for the purpose of adoption given only by a mother of a child born out of wedlock pursuant to section 43-104 shall be sufficient to place the child for adoption and the rights of any alleged father · shall not be recognized thereafter in any court unless the person claiming to be the father of the child has filed with the Department of Social Services . . . within five days after the birth of such child, a notice of intent to claim paternity.

In the instant case, Gomez did not file a notice of intent to claim paternity within 5 days of the births of Kassandra and Nicholas. However, we held in *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987), that § 43-104.02 was unconstitutional as applied to the facts therein. The unwed father in that case shared a familial relationship with his children. We held:

[T]he 5-day filing requirement for unwed fathers [is] a legitimate means of attaining a worthy end, the rapid placement of newborns in families that could commit to raising them. However, the 5-day requirement secures no such result in cases such as this one, where the child is no longer a newborn and has already established strong ties with a father who has acknowledged and supported him. The effect of the requirement is to allow a mother to singlehandedly sever a relationship between father and child, no matter what the quality of that relationship is.

225 Neb. at 768-69, 408 N.W.2d at 278. Therefore, § 43-104.06 applies in the instant case, and consent, in conclusion, was not fatal to the jurisdiction of the county court.

## LACK OF DSS CERTIFICATE

The majority also argues that because Gomez did not timely file under § 43–104.02, the Savages were required to obtain a certificate from DSS stating that the biological father did not file a notice of intent to claim paternity. The problem with this analysis is that it incorrectly assumes Gomez was subject to the 5–day filing requirement in § 43–104.02(1). Section 43–104.04 states:

> *If a notice of paternity is not filed within five days*, the mother of a child born out of wedlock or an agent specifically designated in writing by the mother may request, and the Department of Social Services shall supply, a certificate that no notice of intent to claim paternity has been filed with the department . . . .

(Emphasis supplied.)

Gomez was not required to file a notice of intent to claim paternity within 5 days of the children's respective births because he had formed a familial relationship, however superficial, with the children. Because Gomez was not required to timely file notice under § 43–104.02, it makes no sense to dismiss the instant action based on § 43–104.04, which directed Bechtold to file a certificate from the DSS stating that Gomez had not complied with § 43–104.02. The requirements of § 43–104.06(2), not § 43–104.04, are applicable to this case.

## ANALYSIS OF COURT OF APPEALS' DECISION

The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *In re Application of City of Grand Island*, 247 Neb. 446, 527 N.W.2d 864 (1995); *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993). If a statute is susceptible to more than one reasonable construction, the reviewing court uses the construction that will achieve the statute's purpose and preserve the statute's validity. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). In my opinion, the Court of Appeals' reading of §§ 43–104.02 through 43–104.06 did not accomplish the

statutes' purpose. The legislative purpose of §§ 43–104.02 through 43–104.06 is best preserved by reading the word "claimant" in those statutes as referring to biological fathers of children born out of wedlock who have a familial relationship to the children, not just those biological fathers of children born out of wedlock who satisfy the 5–day filing requirement of § 43–104.02. The more expansive reading of the statute preserves the Legislature's goal of providing a framework for an adoption proceeding after an unwed mother relinquishes her parental rights. See *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448, *appeal dismissed* 479 U.S. 805, 107 S. Ct. 49, 93 L. Ed. 2d 610 (1986).

The Court of Appeals, in deciding that § 43–104.06 did not apply, noted that this statute was entitled "Paternity claim; *request for custody by claimant*" (emphasis supplied) and that the language therein expressly referred to "the claimant." Because §§ 43–104.02 through 43–104.06 were enacted collectively as part of 1975 Neb. Laws, L.B. 224, the Court of Appeals analyzed those statutory provisions together and held that a "claimant" is "one who is without a familial relationship" with a child. *In re Adoption of Kassandra B. & Nicholas B.*, 3 Neb. App. 180, 191, 524 N.W.2d 821, 829 (1994). Simply put, the Court of Appeals held that § 43–104.06 applied to only an alleged father who filed a notice of intent to claim paternity within the first 5 days after the child's birth, as required by § 43–104.02. Because Gomez did not timely file his notice of intent, the Court of Appeals held that he was not a "claimant" and that § 43–104.06 could not be used to terminate his parental rights.

In construing a statute, the court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994). In §§ 43–104.02 through 43–104.06, the Legislature developed a procedure through which the biological father of a child born

out of wedlock could protect his rights. A method to ensure that the father's rights would be addressed is to file a notice of intent to claim paternity within 5 days after the birth of said child. Because Gomez shared a familial relationship with his children, our holding in *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987), made the 5-day notice inapplicable to Gomez. In Gomez' case, the familial relationship can be considered in lieu of the 5-day notice requirement. The familial relationship is an alternative to the 5-day rule in protecting the unwed biological father's rights. The familial relationship accomplishes no more than that, however, and the Court of Appeals was incorrect in holding that the child should be automatically awarded to the biological father.

This court, quoting from *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983), stated:

"[T]he mere existence of a biological link does not merit equivalent constitutional protection." The Court recognized the importance of familial bonds, stressing that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' [citation omitted] his interest in personal contact with his child acquires substantial protection . . . ."

*In re Application of S.R.S. and M.B.S.*, 225 Neb. at 768, 408 N.W.2d at 278.

Because Gomez had a familial relationship, it was essential that his rights be preserved as well they were. What the constitution ensured Gomez was that he would get his day in court. How else could a court determine whether or not Gomez demonstrated the full commitment to the responsibilities of parenthood. Section 43–104.06, then, is the applicable statute to follow in this case, and, indeed, this is the statute invoked by Gomez.

## ANALYSIS UNDER § 43–104.06

The county court was correct in its decision to decide the case by applying § 43–104.06, which reads:

(1) If the claimant seeks to oppose any proposed

relinquishment of a child by the mother and requests custody of the child, the court shall inquire into the fitness of the claimant, his ability to properly care for the child, and whether the best interests of the child will be served by granting custody to the claimant. Only upon the appointment of a guardian ad litem for the child, and a finding that the claimant is a fit person, is able to properly care for the child, and that the child's best interests will be served by granting custody to the claimant, shall custody be granted to the claimant.

(2) . . . upon relinquishment by the mother to a child placement agency licensed by the State of Nebraska, or upon a finding that the child's best interests would not be served by granting custody to the claimant, together with the recommendation by the guardian ad litem, and a finding that termination of the rights of the mother and the father is in the best interests of the child, the court shall terminate the rights of the mother and father and confer such rights upon the licensed child placement agency to whom the relinquishment has been given.

Section 43–104.06 and the other adoption statutes do not provide any framework or guidelines for determining parental fitness and the best interests of the child. The county court referred to the guidelines provided in Neb. Rev. Stat. § 43–292 (Reissue 1993) of the juvenile code and to case law arising out of the juvenile code to conduct its analysis under § 43–104.06. The Court of Appeals determined that the county court did not have jurisdiction to terminate Gomez' parental rights under the juvenile code.

The flaw in the Court of Appeals' reasoning is that the county court did not invoke the juvenile code in terminating Gomez' parental rights. Rather, the county court analyzed the case under the adoption statutes, and § 43–403.06(2), in particular. The Legislature instructed in § 43–104.06 that when the unwed biological father of a child challenged a proposed adoption, the court should inquire into the fitness of the claimant, his ability to properly care for the child, and whether the best interests of the child will be served by granting custody to the claimant. However, the Legislature failed to provide

guidelines under which that analysis should be conducted. The county court properly looked to the case law and similar statutory provisions for guidance in deciding what criteria should be applied to make the determinations required by § 43-104.06.

### GOMEZ INVOKED § 43-104.06

The county court also properly applied § 43-104.06 in the case at bar because all the parties to this action invoked the provisions of the statute. The essential character of an action and relief sought, whether legal or equitable, is determinable from its main object, as disclosed by the pleadings. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994). Neither party timely raised the issue of the unconstitutionality of § 43-104.06 in the lower courts. Gomez also did not file and serve separate written notice pursuant to Neb. Ct. R. of Prac. 9E (rev. 1992) with the Clerk of the Supreme Court that he was presenting a constitutional question. A litigant who invokes the provisions of a statute may not challenge its validity. *State ex rel. Sileven v. Spire*, 243 Neb. 451, 500 N.W.2d 179 (1993). In their petition to adopt Kassandra and Nicholas, the Savages invoked the adoption statutes. Likewise, by filing his notice of intent to claim paternity, Gomez invoked the adoption statutes. The record reflects that Gomez was well aware that by invoking § 43-104.06 he risked his parental rights' being terminated. Neither party may now complain of the effect of the adoption statutes.

### COUNTY COURT'S DECISION

The county court determined that Gomez was unfit to properly care for Kassandra and Nicholas and that it would be in the best interests of the children to award custody to K.E.S.I.L., thereby approving the Savages' petition for adoption.

We review appeals in adoption proceedings for errors appearing on the record in the county court. Neb. Rev. Stat. § 25-2733 (Reissue 1989). See, also, *In re Guardianship of T.C.W.*, 235 Neb. 716, 457 N.W.2d 282 (1990). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is

supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Dillard Dept. Stores v. Polinsky,* 247 Neb. 821, 530 N.W.2d 637 (1995); *Dolan v. Svitak,* 247 Neb. 410, 527 N.W.2d 621 (1995); *Crawford v. Department of Motor Vehicles,* 246 Neb. 319, 518 N.W.2d 148 (1994).

As noted previously, the county court properly looked to § 43-292 in the juvenile code for guidance in determining whether Gomez was an unfit parent for the purposes of § 43-104.06. Consistent with § 43-292 and § 43-104.06, the county court could have terminated the biological father's parental rights under § 43-104.06 if there was clear and convincing evidence that the children's best interests would not be served by granting him custody. The relevant criteria listed in § 43-292 include: (1) the biological father has abandoned the children for 6 months or more immediately prior to the petition for adoption; (2) the biological father substantially and continuously or repeatedly neglected the children and refused to give the children necessary parental care and protection; (3) the biological father, being financially able, willfully neglected to provide the children with the necessary subsistence, education, or other care necessary for the children's health, morals, or welfare; (4) the biological father is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found to be seriously detrimental to the health, morals, or well-being of the children; or (5) the biological father is unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period. The county court held that the first and fifth criteria were not applicable to Gomez.

### DETERMINATION OF UNFITNESS

The county court, in holding that there was clear and convincing evidence that the children's best interests would not be served by placing them with Gomez, stated:

> The evidence shows a pattern on the part of [Gomez] of taking no responsibility for the children or only taking responsibility when it suited him or under his terms

emotionally and financially. . . .

The evidence shows a clear pattern of substance abuse, both legal and illegal, which [Gomez] has not addressed in a manner to satisfy this Court of his good intentions to refrain from the use of intoxicants or illegal substances.

At trial, Gomez admitted that he did not pay any of the financial costs for the births of the three children he fathered with Bechtold. Gomez testified that from the time he and Bechtold separated in August 1990 until he learned of Bechtold's relinquishment in November 1991, he provided only approximately $500 in financial support and visited with the children approximately once a month. The record reflects that Gomez earned between $4,500 and $7,500 in 1991. Additionally, Gomez admitted that when he and Bechtold separated for approximately 4 months sometime after Kassandra's birth but prior to Nicholas' birth, he went to Kansas, provided no financial support, and never visited his children.

Gomez attempted to refute this evidence of neglect by testifying that he provided the children with clothing, toys, food, and school supplies when they visited him. Gomez testified that he took the children on family trips to the park and the zoo. He also testified that he provided the children with emotional support by telling the children they could always talk to him. Gomez stated that he did not give more money to Bechtold because he did not trust her.

Gomez admitted that he smoked marijuana in the past, but claimed that he had not done so since 1987. However, his oldest daughter testified that as recently as July 1993, she observed marijuana in Gomez' residence and saw Gomez smoking marijuana.

Gomez also admitted that he had a problem with alcohol, though he had never sought any help for his drinking problem. Gomez thought he would be able to handle the problem without assistance. In January 1992, Gomez was twice arrested and pled guilty to two charges of driving while under the influence. Previously, in 1988 or 1989, Gomez was convicted of felony criminal mischief for stealing a car stereo and served a 30–day prison sentence. On another occasion, Gomez was ticketed after

trying to kick out a door at the Omaha police station while under the influence of alcohol.

As noted above, our inquiry in the instant appeal is whether the county court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. In summary, Gomez admitted to a problem with alcohol abuse and testified that he still uses alcohol. The record reflects that Gomez has at least four criminal convictions, including one felony conviction for which he served jail time and two convictions of driving while under the influence. Gomez has consistently failed to provide Kassandra and Nicholas with more than de minimis amounts of financial and emotional support. I would hold that the county court properly found Gomez unfit.

BEST INTERESTS OF CHILDREN

Having found Gomez unfit, the county court next addressed whether it would be in the best interests of the children to be placed with the Savages. The county court held:

> The Court notes the professional opinions offered to the Court agreed on one prevailing issue: stability is a major concern in determining the best interests of these children.
>
> The evidence clearly and unequivocally shows that until their relinquishment these children had no stability in their lives, being moved from place to place regularly; the claimant entering and leaving the home; lack of support, both financial and emotional, by the claimant; the mother of these children struggling to maintain some semblance of stability with her limited resources.
>
> Since the relinquishment, these children have had a stable and nurturing environment, both emotionally and financially.

The county court determined that it would be in the best interests of the children to grant the Savages' petition for adoption and to place Kassandra and Nicholas with the Savages. I agree. There is abundant evidence in the record to support the county court's decision allowing the adoption.

GERRARD, J., joins in this dissent.