REQUESTED BY: Senator Don Wesely Nebraska State Legislature
LB 280 is a bill dealing with recognition of certain marriages in Nebraska. The bill states that "[i]t is declared to be the strong public policy of this state to recognize as valid only those marriages from other states that are between one man and one woman." In light of this policy, the bill would amend Neb. Rev. Stat. § 42-103 (1993) to add marriages "when the parties are of the same sex" to a listing of types of marriages which are void under Nebraska law. The existing portions of §42-103 currently void certain marriages where there is a previous spouse living at the time of the marriage, where one of the parties is mentally incompetent, or where the parties are related in certain respects. The bill would also amend Neb. Rev. Stat. § 42-117 (1993) to read:
 All marriages contracted in any other country, state, or territory, which would be valid by the laws of the country, state or territory in which the same were contracted shall be valid in all courts and places in this state unless the marriage would be void under section 42-103.
An amendment to LB 280 has now been proposed which would further alter the bill's effect upon § 42-117. Amendment No. FA125 would amend LB 280 to insert the words "or customs" into the bill, so that the proposed amendment to § 42-117 would read:
 All marriages contracted in any other country, state, or territory, which would be valid by the laws or customs of the country, state or territory in which the same were contracted shall be valid in all courts and places in this state unless the marriage would be void under section 42-103.
(language of Amendment No. FA125 emphasized). Your question goes to the additional language for LB 280 proposed in Amendment No. FA125.
In your opinion request letter, you note that there is a case currently pending in Lancaster County in which "Iraqi parents . . . forced their thirteen and fourteen year old daughters to marry Iraqi men, aged 28 and 34." You go on to state that, "[t]he Iraqi parents argued that such marriages were a custom in their country." You then ask, "[w]ould [Amendment No. FA125] . . . provide them [the Iraqi parents] protection to go forward with such a forced marriage based on the fact that they claim it to be a custom of their country?"
The word "customs" is not defined in either LB 280 or Amendment No. FA125; nor is it defined in the statute which contains general definitions for use with the Nebraska statutes.See Neb. Rev. Stat. § 49-801 (1993). Therefore, when the word "customs" is used in a statute, it must be given its plain and ordinary meaning. Application of City of Grand Island247 Neb. 446, 527 N.W.2d 864 (1995). In that regard, a "custom" is generally defined as "a social convention carried on by tradition and enforced by social disapproval of any violation" or "such practices, collectively." WEBSTER'S NEW WORLD DICTIONARY 349 (2nd college ed. 1982). Under that definition, it seems to us that it would be possible to argue that a tradition or practice of arranged or contracted marriages of young girls for religious or other reasons in a particular country or culture would involve a "custom" of that country or culture for purposes of the proposed amendment to § 42-117 contained in FA125.
Neb. Rev. Stat. § 42-102 (1993) provides that individuals wishing to marry in Nebraska must be at least seventeen years of age. Since LB 280 and its proposed changes for § 42-117 apply only to marriages "contracted in any other country, state, or territory," we do not believe that the additional language proposed for § 42-117 by Amendment No. FA125 would abrogate that age requirement for a marriage arranged or contracted in Nebraska simply on the basis of "custom." On the other hand, if the parents of a young child contracted for his or her marriage in another "country, state or territory" where the tradition and practice was to arrange and contract for such marriages, the marriage under those circumstances might well be valid in spite of § 42-102.
We would note that the Nebraska criminal statute dealing with first degree sexual assault provides that:
 Any person who subjects another person to sexual penetration . . . (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree.
There is nothing in that statute which creates an exception for sexual relations with a person under sixteen years of age when the relations occur within a "marriage." As a result, we believe that an older spouse in a marriage contracted out of this state which might be valid based upon "custom" would still be liable for potential prosecution for first degree sexual assault should he or she perpetrate sexual relations with his or her "spouse" under sixteen years of age.
We would also point out that, even if Amendment No. FA125 to LB 280 is passed, it would still be possible to argue that the forced marriage of underage children to older spouses is so against the strong policy of this state that such marriages are void. This argument would be based, in part, upon the criminal statute cited above, and also upon authority from other jurisdictions which holds that no state is bound by comity to give effect in its courts to the marriage laws of another state repugnant to its own laws and policy. Hager v. Hager, 3 Va. App. 415, 349 S.E.2d 908 (1986); State v. Austin, 234 S.E.2d 657
(1977).
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
Don Stenberg
Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature