REQUESTED BY: John Breslow Nebraska Auditor of Public Accounts
LB 1114,[1] passed by the Legislature in 1996, places limitations upon the property taxes which may be levied by various local governmental subdivisions in the State of Nebraska. However, Section 3 of that bill, now codified at § 77-3444, allows governmental subdivisions to exceed those levy limits in certain specified instances. For example, subsection (3) of § 77-3444 allows the people of villages and other small governmental subdivisions to exceed the levy limits for those entities after approval of the excess levy at a form of town meeting. In that regard, § 77-3444(3) provides:
 In lieu of the election procedures in subsection (1) of this section [which allow the voters of certain governmental subdivisions to approve excess property tax levies by popular vote at an election], any political subdivision subject to section 77-3443,[2] other than a Class I school district, and villages may approve a levy in excess of the limits in section 77-3442 or the allocation provided in section 77-3443 for a period of one year at a meeting of the residents of the political subdivision or village, called after notice is published in a newspaper of general circulation in the political subdivision or village at least twenty days prior to the meeting. At least ten percent of the registered voters residing in the political subdivision or village shall constitute a quorum for purposes of taking action to exceed the limits. If a majority of those casting votes at the meeting vote in favor of exceeding the limits, a copy of the record of that action shall be forwarded to the county board prior to September 30 and the county board shall authorize a levy as approved by the residents for the year.
Section 77-3444(3) obviously offers little guidance as to any procedures which might surround the town meeting process which it creates. Therefore, you have posed a number of procedural questions to us under that statute because you believe that our answers to those questions will "help [you] . . . determine the information [you] . . . will need for monitoring compliance with these levy limits as part of [your] . . . budget review responsibility." We will set out each of your specific questions together with our response below.
 Question No. 1. "The Statute [§ 77-3444(3)] refers to residents and registered voters. It is clear a quorum of 10 percent of the registered voters is required. It is unclear as to whether the majority vote refers to registered voters or residents at the meeting. Can only the registered voters vote at the meeting or can all residents vote? If resident, how shall resident be defined?"
[1] 1996 Neb. Laws LB 1114 (codified at Neb. Rev. Stat. §§77-3442 through 77-3445 (1996, Supp. 1997)).
[2] Examples of such governmental subdivisions include Weather Control Districts, City Airport Authorities, County Airport Authorities, Cemetery Districts, Rural and Suburban Fire Protection Districts, and Road Improvement Districts.
To the extent that § 77-3444(3) is unclear, the legislative history of that act may be examined to ascertain the Legislature's intent with respect to that statutory provision.Southern Nebraska Rural Public Power District v. NebraskaElectrical Generation and Transmission Cooperative, Inc.,249 Neb. 913, 546 N.W.2d 315 (1996); Omaha Public Power District v.Nebraska Dept. of Revenue, 248 Neb. 518, 537 N.W.2d 312 (1995). As a result, we have reviewed the voluminous legislative history of LB 1114, and while the matter is not entirely without question, several segments of that history do strongly support the notion that the vote taken at a town meeting convened under § 77-3444(3) is to be a vote of the registered voters who live in the governmental subdivision who are present, rather than just a vote of those residents who are present. Our conclusion is based upon those portions of the legislative history discussed below.
First of all, the Legislature's committee records for LB 1114 indicate that the language at issue was added to the bill by the Revenue Committee as a result of committee amendments which replaced the original bill in its entirety. The committee's explanation of those amendments contains the following discussion:
 Section 3 [of LB 1114] allows a political subdivision to exceed the limits on a majority vote of the registered voters in the subdivision. The issue may reach the ballot either by passage of a resolution by a two-thirds majority voted of the governing body or by petition signed by 5 percent of the registered voters. The excess levy shall be limited to 5 years. This section also allows miscellaneous districts subject to section 2 and villages to exceed the limits by a majority vote at a meeting of the voters attended by at least 10 percent of the registered voters. Special election provisions for S.I.D.'s are provided by the bill.
Committee Records on LB 1114, 94th Neb. Leg., 2nd Sess., Committee Statement 3 (February 1, 1996) (emphasis added).
In addition, portions of the Floor Debate on LB 1114 are also instructive. On two occasions, Senator Warner, Chairman of the Revenue Committee, discussed the meeting provisions which are now a part of § 77-3444(3). The first discussion occurred on March 21, 1996:
 In all cases, the [levy] limitations here, if they are inadequate, the local governmental subdivision could request the registered voters to approve an increase with a two-thirds vote of the majority vote of the governing board to be given to . . . or by a petition signed by 5 percent of the registered voters, and then they can set a levy limit at a higher rate for a period of at least five years that would remain in their base, at the end of that time, if they chose not to continue it. In addition, there is an allowance for those districts which are those miscellaneous districts, small districts, such as townships, where in effect at an annual meeting of the residents of that governmental subdivision are required (sic) to have at least 10 percent of the people who are residents of the district, who are registered voters and residents of the district in attendance, they could then set a levy that would be higher than . . . than what would be authorized here by the county board to do.
Floor Debate on LB 1114, 94th Neb. Leg., 2nd Sess. 13495 (March 21, 1996) (Statement of Sen. Warner) (emphasis added). The second discussion was on March 25, 1996:
 Across the state generally, you talk about two or four cents for the operation of fire districts. There are a few that are up at the ten or twelve cents, which is the maximum statutory authorization. As a practical matter, in those cases, if their needs cannot be met, you know what is expected to happen is that they would go for a . . . because they're in that fifteen cents, they can go the route of a special meeting, which they would, in fact, need 10 percent of their registered voters in attendance of which 51 percent of that number could adopt.
Floor Debate on LB 1114, 94th Neb. Leg., 2nd Sess. 13766 (March 25, 1996) (Statement of Sen. Warner) (emphasis added).
Therefore, on the basis of the legislative history of LB 1114, we believe that only those registered voters who areresidents of a governmental subdivision may vote at the meeting contemplated by § 77-3444(3).[3] Moreover, in the absence of anything indicating the contrary, statutory language in Nebraska is to be given its plain and ordinary meaning.Application of City of Grand Island 247 Neb. 446,527 N.W.2d 864 (1995). Consequently, only those registered voters who "reside or dwell in" a governmental subdivision are registered voters and "residents" of that entity for purposes of §77-3444(3). BLACK'S LAW DICTIONARY 1177 (5th ed. 1979).
 Question 2. Who is responsible for determining whether ten percent of the registered voters are in attendance [at a meeting under § 77-3444(3)]? Is a list of signatures of registered voters required to verify the ten percent?
Section 77-3444(3) is silent with respect to the specific issues raised in your second group of questions, and the legislative history of that statute offers no guidance. However, it seems to us that the general provisions of that statute, when considered with the other statutes pertaining to governmental subdivisions, dictate that the governing body of the subdivision which called the meeting determines whether the requisite percentage of registered voters is in attendance at a meeting under § 77-3444(3). There are several reasons for that conclusion. First of all, the governing body of the subdivision involved would be generally charged with the overall authority to conduct the affairs of the subdivision, and as a result, it would presumably have the necessary authority to conduct the meeting in question and determine if the requirements of the statute are met. Second, under § 77-3444(3), some entity has to make the determination to call the meeting and publish the notice of the meeting in the newspaper. Presumably, that entity is the governing body of the subdivision. Finally, if a property tax levy raised as a result of the meeting process under §77-3444(3) is challenged in a taxpayer lawsuit or otherwise, the governing body of the subdivision may well be called upon to defend the validity of the meeting which established the levy increase. Consequently, it seems to us that the governing body of the subdivision is responsible for making the initial determination as to whether ten percent of the registered voters are in attendance at a meeting under §77-3444(3).[4]
The language of § 77-3444(3) also does not set out any requirement for the preparation of a list of signatures of the registered voters present at a meeting under that statute. However, in order for the county board of the appropriate county to authorize a levy by the subdivision consistent with the results of such a meeting, a record of that meeting must be sent to the county board, and preparation of a list of the signatures of the registered voters present at the meeting would undoubtedly be useful in establishing the underlying basis for that record. More importantly, as previously noted, it may be necessary for the governing body of the subdivision to defend the procedures surrounding a meeting for an increased tax levy under §77-3444(3). A list of the signatures of the registered voters present at that meeting would also clearly be useful in such a defense. Consequently, it seems to us that common sense would suggest that the governing body of a governmental subdivision seeking increased levy authority under § 77-3444(3) would ask those registered voters and residents present at a meeting under the statute to sign a list of registered voters attending and voting at the meeting.[5]
 Question 3. The Statute [§ 77-3444(3)] requires a copy of the record of action to be forwarded to the county board. What is to be required to be included on the record of action? Would it need to be certified by the subdivision board? Who is responsible for forwarding the record of action? May a subdivision's board vote not to increase the levy following a vote?
Once again, § 77-3444(3) is silent with respect to the specific issues presented in the final group of questions set out in your opinion request, and the legislative history of LB 1114 offers no additional guidance as to those issues. Therefore, we must rely on the general language of the statute in formulating a response.
A. Record of action at a meeting under § 77-3444(3).
While § 77-3444(3) does not set out the precise requirements for the record of a meeting which must be forwarded to the county board under that statute, it seems to us that the statute would generally require at least the following items:
 1. Proof of publication which establishes that notice of the meeting was published in a newspaper of general circulation in the political subdivision or village at least twenty days prior to the meeting.
 2. A listing of the number of registered voters who reside in the governmental subdivision as obtained from materials provided by the appropriate county election or tax officials.
 3. A listing of the number of registered voters who reside in the governmental subdivision present at the meeting as established by the signature list of registered voters attending and voting.
 4. The language of any motion to approve a property tax levy by the governmental subdivision in excess of the levy permitted by statute, and a record of the number of votes cast at the meeting by registered voters who are residents of the subdivision for and against that motion.
Section 77-3444(3) contains no requirement that the record submitted to the county board be "certified" in any fashion by the governing body of the governmental subdivision. In addition, since it appears that the governing body of the subdivision is responsible for calling and conducting the meeting, it seems to us that the governing body of the subdivision is also responsible for "forwarding the record of the action" to the county board.
 B. Conclusive effect of the vote at a meeting under § 77-3444(3).
We assume that your final question goes to whether a subdivision's governing board may vote against increasing a property tax levy after a meeting under § 77-3444(3) in which the registered voters and residents of the subdivision voted to increase the levy. First of all, we are at a loss to understand why the governing body of a governmental subdivision would expend all the time, effort and expense necessary to call and conduct a meeting under § 77-3444(3) so as to authorize an increased property tax levy, and then follow that effort with a vote not to increase the levy. Nevertheless, the final portion of §77-3444(3) provides:
 At least ten percent of the registered voters residing in the political subdivision or village shall constitute a quorum for purposes of taking action to exceed the limits. If a majority of those casting votes at the meeting vote in favor of exceeding the limits, a copy of the record of that action shall be forwarded to the county board prior to September 30 and the county board shall authorize a levy as approved by the residents for the year.
(Emphasis added). Consequently, the portions of § 77-3444(3) emphasized above contemplate that the registered voters and residents of the governmental subdivision will actually "take action" to raise the property tax levy at a meeting under that statute. Moreover, a record of that action taken "shall" be forwarded to the county board, and the county board "shall" authorize the levy as approved by the residents for the year. It seems to us that the final and mandatory nature of that language indicates that the action by the registered voters at the meeting under § 77-3444(3) should be final. Accordingly, the subdivision board may not subsequently vote to reduce that annual property tax levy after the meeting.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[3] We also believe that this result is strongly suggested by the plain language of § 77-3444(3) itself.
[4] We would also note, however, that § 77-3444(3) requires that a record of the vote at the meeting be sent to the appropriate county board, and that the county board of the county affected actually "authorizes" the approved property tax levy. Accordingly, it appears to us that the county board will also have to make a determination as to whether 10 percent of the registered voters were in attendance at the meeting on the basis of the record before it.
[5] Subdivision officials presumably will be able to obtain information concerning the number and names of registered voters who are residents in the subdivision from county election and tax officials.