IN RE BABY GIRL BATT.
BABY GIRL BATT, BY CANDACE BATT, HER NATURAL MOTHER
AND NEXT FRIEND, APPELLANT, v. NEBRASKA CHILDREN'S
HOME SOCIETY, APPELLEE.
174 N. W. 2d 88

Filed January 30, 1970. No. 37357.

Richard J. Bruckner of Schrempp, Rosenthal, McLane & Bruckner, for appellant.

Lane, Baird, Pedersen & Haggart, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This was an action to determine the validity of a relinquishment for adoption executed by the appellant, Candace Batt Schaffer. The trial court found that the relinquishment was valid and dismissed the action. The plaintiff has appealed.

The relinquishment was signed by the appellant when she was 17 years of age. Her first contention is that the relinquishment is invalid because she was not of age at the time it was executed.

The adoption statute requires the written consent of

the mother of a child born out of wedlock unless the child has been relinquished for adoption by a written instrument. § 43-104, R. S. Supp., 1967. The statute contains no provision regarding the age of the mother at the time the consent or relinquishment is executed. It is generally held that a consent or relinquishment executed by a mother who is not of age is valid unless the statute contains a specific requirement concerning the age of the mother. Nelson v. Gibson, 235 Minn. 192, 50 N. W. 2d 278; Kozak v. Lutheran Children's Aid Society, 164 Ohio St. 335, 130 N. E. 2d 796. See, also, Gills v. Burdette, 83 Ohio App. 368, 83 N. E. 2d 813; In re Brock, 157 Fla. 291, 25 So. 2d 659. We conclude that a consent or relinquishment executed by a minor is valid in this state.

The appellant next contends that the relinquishment was invalid because it was not properly acknowledged. Section 43-106, R. S. Supp., 1967, provides that consents must be acknowledged before an officer authorized to acknowledge deeds in this state. No particular form of acknowledgment is specified.

The relinquishment involved in this case is regular on its face and recites that it is a voluntary relinquishment. The certificate of the notary public recites that the appellant acknowledged the execution of the relinquishment to be her voluntary act and deed.

The evidence shows that the relinquishment was signed by the appellant in the presence of three persons, one of whom was a notary public employed by the appellee. The notary public testified that she handed the copies of the relinquishment to the appellant so that she could read them. When the appellant was ready to sign them, the notary public said to the appellant: " 'Now, you realize that these relinquishments are— that you are giving the baby, when you sign these you are giving the baby to the Nebraska Childrens Home and when you sign these papers this is final and you can't change your mind and you cannot have your baby

back.'" The notary public further testified that the appellant said that she understood and that appellant signed the relinquishment without any reluctance.

The appellant argues that the acknowledgment was defective because she did not read the instrument and the notary public did not ask her if it was her voluntary act and deed. The fact that the appellant may not have read the instrument is not important in view of the testimony that it was explained to her before she signed it. The evidence shows an intention to voluntarily execute a valid relinquishment. Under such circumstances, the failure to inquire as to whether the execution was the voluntary act and deed of the appellant is an irregularity. Bode v. Jussen, 93 Neb. 482, 140 N. W. 768. The appellant's second contention is without merit.

The appellant's third contention is that the relinquishment was obtained through fraud, duress, or coercion. The appellant testified that she discovered that she was pregnant in September 1967. She was kept at home for 2 weeks and then taken to Omaha. Her mother insisted that she could not keep the baby, that she could not come home if she had the baby, and that the baby would be deformed or retarded. She entered the Booth Hospital and remained there until she was taken to University Hospital where the child was born on December 27, 1967. She was then returned to the Booth Hospital and was discharged early in January 1968. The child was placed with adoptive parents by the appellee when it was 1 month old.

The relinquishment was executed at the Booth Hospital on December 29, 1967, 2 days after the child was born. According to the appellant, a social worker employed by the appellee, Katharine Goeser, showed the appellant the relinquishment and then said: " 'We have talked to your mother and we have talked to your grandma and grandpa and it is all settled, this is the final paper and after you sign it, you can go back home and back to school.' " Appellant claims that she was re-

fused permission to call her mother, grandfather, and boyfriend and told: " 'There is no need for any phone calls. It is settled and signed.' " Appellant states that she signed the relinquishment "Because of my mother and everyone told me I had to. I couldn't get out of the room. The door was shut and I could not leave."

Mrs. Goeser testified that it was her understanding that the appellant wanted to relinquish the baby; that it was "just an accepted fact. She did not want this baby"; and that the appellant never mentioned not wanting to relinquish the child. Mrs. Goeser was at the University Hospital when the appellant saw her baby, and she did not at that time express a desire to keep the baby. Mrs. Goeser corroborated the testimony of the notary public as to the execution of the relinquishment. Mrs. Goeser said that appellant expressed no reluctance at signing the relinquishment and expressed no emotion but "relief of having it over with." Mrs. Goeser testified that the appellant did not ask to call her mother, grandfather, or boyfriend and "There was never any indication of her wanting to get her baby back."

Margaret Fisher, an employee of the Booth Hospital, the third person present at the execution of the relinquishment, corroborated the testimony of Mrs. Goeser and the notary public. According to Mrs. Fisher, it was the least emotional relinquishment that she had ever seen.

The appellant admits that she did nothing toward getting the baby back until in May of 1968. This action was commenced in July. The record as a whole indicates a change of attitude long after the execution of the relinquishment rather than fraud, duress, and coercion at the time of its execution. The record fully sustains the finding of the district court that no fraud, duress, or undue influence affected the execution of the relinquishment.

The judgment of the district court is affirmed.

AFFIRMED.