IN RE ADOPTION OF LESLIE P.
SHANNON P., APPELLANT, V. AMY C., APPELLEE.
604 N.W.2d 853

Filed January 18, 2000.    No. A-99-146.

[redacted]

Michael E. Piccolo, of Clough, Dawson, Piccolo & Jones, for appellant.

Blaine T. Gillett and James C. Bocott, of Ruff Nisley & Lindemeier, for appellee.

HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.

HANNON, Judge.

This is an appeal by Shannon P., the father of Leslie P., a child born on September 30, 1992, from an order denying Shannon's motion to set aside a decree of adoption allowing Rex C., the present husband of Leslie's mother, Amy C., to adopt Leslie. The motion to vacate was based upon the incorrect and misleading, if not perjurious, affidavit filed by Amy to obtain service by publication upon Shannon in the adoption proceedings. We conclude the trial court erred in denying Shannon's motion. Accordingly, we reverse, and remand with direction to set aside the decree of adoption.

## INTRODUCTION

Shannon and Amy were divorced in September 1995 in Lincoln County, Nebraska. Amy was awarded custody of Leslie, subject to reasonable visitation reserved for Shannon. In September 1996, Amy married Rex. In June 1998, Amy and Rex filed a petition for adoption in the Dawson County Court praying that Rex be allowed to adopt Leslie. Amy moved for and received an order for service by publication upon the basis of an affidavit, stating, in summary, (1) that Shannon has had no contact of any sort with Leslie since September 1997; (2) that Amy has had no contact whatsoever with Shannon since September 1997; (3) that after diligent investigation and inquiry, Amy was unable to ascertain and does not know the whereabouts of

Shannon; and (4) that Amy has contacted all relatives of Shannon whose addresses are known to her and has been told that they do not know where Shannon is living or how to get in touch with him. On November 17, 1998, Shannon filed a motion to vacate and set aside the decree of adoption, filed on July 15, 1998, on the basis that Amy's affidavit was fraudulent, misleading, and was used by Amy to deceive and misrepresent crucial facts to the court in her plea for substitute service. Additionally, Shannon asserted that Amy could have contacted him with "minimal effort."

## SUMMARY OF EVIDENCE

At trial, Amy admitted that in January 1998, she and Shannon had a brief conversation on the telephone, but testified that Shannon did not let her know where he was living. On that same day, she also spoke by telephone with Shannon's father and stepmother; however, she admitted that she did not ask them if they knew the whereabouts of Shannon. She testified that Shannon may have left telephone messages on her answering machine in April and June 1998, but that he did not leave a number where he could be reached and that she did not know his whereabouts. Amy admitted that in July 1998, Shannon spoke briefly with Leslie, but at that time, Amy did not ask Shannon where he was living because she did not talk to him. From December 1997 to June 1998, Amy did not receive any correspondence from Shannon indicating his whereabouts or his address.

Amy admitted that her only investigation or inquiry as to Shannon's whereabouts occurred in November 1997 when she called Shannon's father and stepmother's residence in Auburn, Kansas, and left a message on their answering machine asking them if they knew Shannon's whereabouts. She testified that they never called her back. She admitted that she did not call any other relatives of Shannon, nor did she call Shannon's grandmother who lived in Hamilton, Kansas. Shannon and Amy had lived with the grandmother for 1 month during their marriage. She also testified that she did not contact any of Shannon's siblings to locate Shannon because she did not know where any of them lived.

She testified that since the divorce, Shannon has lived at several residences; that she has lived in Farnam, Nebraska, with Leslie for 2 years 5 months; that after she was divorced from Shannon in 1995, she kept in contact with the Lincoln County Attorney's office to try to obtain child support from Shannon; that she did not try to locate Shannon through the county attorney's office; and that she received child support in January 1998 through garnishment of an "unemployment check."

Shannon, his father, and his stepmother testified. Their evidence established that Shannon lived in Arnold, Nebraska, and that then, he moved to Hamilton, Kansas, where his family lived, and where Shannon and Amy had lived for a time during their marriage. Their evidence established several incidents of telephone contact between Amy and Leslie on the one hand and Shannon, his father, his stepmother, and his grandmother on the other during 1997 and 1998. Their evidence would establish that any reasonable person would have inquired as to Shannon's whereabouts from the members of his extended family who were clearly permanently located in a certain area in Kansas. We do not review this evidence because, as discussed later in this opinion, the invalidity of Amy's affidavit is clearly established by Amy's own testimony.

## ASSIGNMENTS OF ERROR

Simplified, Shannon alleges that the trial court erred in not sustaining his motion to vacate and set aside the decree of adoption.

## STANDARD OF REVIEW

Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. *In re Guardianship of T.C.W.*, 235 Neb. 716, 457 N.W.2d 282 (1990). As to questions of law, an appellate court is obligated to reach its conclusions independent of the determinations of the trial court. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

## DISCUSSION

Shannon argues that the affidavit in support of substitute service, prepared by Amy and filed with the county court, alleging that she made a diligent investigation and inquiry as to

Shannon's whereabouts, was false and misleading, and perpetrated a fraud upon the county court. We agree. Even if only Amy's testimony at trial is accepted as true, it establishes that the affidavit is clearly false and misleading. If the evidence of Shannon and his witnesses is accepted, Amy's affidavit is one of the most blatant cases of perjury by affidavit the members of this court have had the misfortune of encountering in our rather lengthy legal careers.

The statute authorizing substitute service by publication, Neb. Rev. Stat. § 25-517.02 (Reissue 1995), provides:

> Upon motion and showing by affidavit that service cannot be made with reasonable diligence by any other method provided by statute, the court may permit service to be made (1) by leaving the process at the defendant's usual place of residence and mailing a copy by first-class mail to the defendant's last-known address, (2) by publication, or (3) by any manner reasonably calculated under the circumstances to provide the party with actual notice of the proceedings and an opportunity to be heard.

In *In re Interest of A.W.*, 224 Neb. 764, 766, 401 N.W.2d 477, 479 (1987), the Nebraska Supreme Court found:

> A reasonably diligent search for the purpose of justifying service by publication does not require the use of all possible or conceivable means of discovery, but is such an inquiry as a reasonably prudent person would make in view of the circumstances and must extend to those places where information is likely to be obtained and to those persons who, in the ordinary course of events, would be likely to receive news of or from the absent person.

The court further stated, "Whether all reasonable means have been exhausted must be determined by the circumstances of each particular case." *Id.*

In the instant case, Amy stated in her affidavit that Shannon made no contact of any sort with Leslie since September 1997 and that she had not had any contact with Shannon since September 1997. At the hearing, she admitted that she had a brief conversation with Shannon in January 1998 and that Shannon may have left telephone messages on her answering machine in April and June 1998. She also testified that Shannon

spoke briefly with Leslie in July 1998. Amy's testimony at trial clearly contradicts her affidavit.

Her affidavit also stated that after diligent investigation and inquiry, she was unable to ascertain and did not know the whereabouts of Shannon. At the hearing, Amy admitted that her only inquiry as to Shannon's whereabouts consisted of one attempted telephone call to Shannon's parents' home, which resulted in a message left on an answering machine. She testified that she did not call any other relative of Shannon. She admitted that she did not contact Shannon's grandmother, whom she had lived with during her marriage to Shannon. She also testified that she did not contact any of Shannon's siblings. In her affidavit, Amy swore that she was told by Shannon's relatives that she did contact, that they did not know Shannon's whereabouts or even how to contact him. Her testimony at the hearing establishes that she did not contact any of them.

It is clear from the testimony and Amy's admissions that Amy did not make the inquiry that a reasonably prudent person would have made under these circumstances. We also find that her inquiry did not extend to those places or people where information would have likely been obtained. "[A] search which makes no effort to determine where the subject of the search was last known to be and which makes no effort to check whether the subject is still there cannot be considered reasonably diligent." *In re Interest of A.W.*, 224 Neb. at 768, 401 N.W.2d at 480. Assuming that Amy did not actually know where Shannon was, there were so many leads she did not follow that we do not hesitate to hold as a matter of law that Amy's affidavit was inadequate and violated Shannon's fundamental due process rights.

On the basis of plain error, we also point out an equally inadequate aspect of the proceeding, which would also require the granting of the motion to set aside the decree. Neb. Rev. Stat. § 25-520.01 (Reissue 1995) provides:

> In any action or proceeding of any kind or nature . . . where a notice by publication is given as authorized by law, a party instituting or maintaining the action or proceeding with respect to notice or his attorney shall within five days after the first publication of notice send by United States mail a copy of such published notice to each

and every party appearing to have a direct legal interest in such action or proceeding whose name and post office address are known to him. Proof by affidavit of the mailing of such notice shall be made by the party or his attorney and shall be filed with the officer with whom filings are required to be made in such action or proceeding within ten days after mailing of such notice. Such affidavit of mailing of notice shall further be required to state that such party and his attorney, after diligent investigation and inquiry, were unable to ascertain and do not know the post office address of any other party appearing to have a direct legal interest in such action or proceeding other than those to whom notice has been mailed in writing.

A review of the record does not show that Amy complied with this statute by mailing a copy of the published notice to Shannon at his last known address.

In *Farmers Co-op. Mercantile Co. v. Sidner*, 175 Neb. 94, 120 N.W.2d 537 (1963), the estate had not sent a party with a contingent claim a copy of the published notice, and the claimant argued this was a jurisdictional defect to the order barring claims. The Nebraska Supreme Court stated that in order to determine whether or not the court was without jurisdiction to bar claims, it was necessary to ascertain the true meaning of "a direct legal interest in the action or proceeding," *id.* at 97-98, 175 N.W.2d at 539, as it appears in § 25-520.01, "R. S. Supp., 1961," *id.* at 98, 175 N.W.2d at 540. The court held that the unliquidated damage claim asserted by the claimant in its petition was not a direct legal interest in the estate and that therefore, the claimant had no right or rights to the notice and affidavit under the provisions of § 25-520.01. The rights of a parent with visitation rights and the duty to support under a district court decree are clearly distinguishable from the rights of a contingent claimant in an estate.

The Nebraska Supreme Court in *In re Interest of W.*, 217 Neb. 325, 330, 348 N.W.2d 861, 865 (1984), stated: "[T]he right of parents to maintain custody of their children is a natural right protected by the Constitution, such parental right is subject to the paramount interest which the public has in the protection of the rights of a child." Moreover, in termination of parental rights

cases, the Nebraska Supreme Court has stated that " 'persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.' " *In re Interest of L.V.*, 240 Neb. 404, 412, 482 N.W.2d 250, 256 (1992), quoting *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

It is clear that a parent with constitutional rights to a child has the direct legal interest referred to in § 25-520.01 and that failure to follow § 25-520.01 would result in a jurisdictional defect in the adoption proceedings.

We conclude that because Shannon was denied proper notification of the adoption proceedings, as clearly required by the statutes of this state, the county court lacked jurisdiction to grant the adoption decree and that therefore, the decree must be set aside. Accordingly, we reverse, and remand the decision of the trial court with direction to vacate the decree of adoption dated July 15, 1998.

REVERSED AND REMANDED WITH DIRECTION.