IN RE ADOPTION OF LUKE.
B.P. AND A.E., APPELLANTS, V.
STATE OF NEBRASKA, APPELLEE.
640 N.W.2d 374

Filed March 8, 2002.   No. S-01-053.

Amy A. Miller, of American Civil Liberties Union Foundation of Nebraska, for appellants.

Don Stenberg, Attorney General, and L. Steven Grasz for appellee.

David S. Buckel, Adam L. Aronson, Patricia M. Logue, and Susan Sommer, of Lambda Legal Defense and Education Fund, Inc., Robert F. Bartle, of Bartle & Geier, and G. Michael Fenner for amicus curiae Lambda Legal Defense and Education Fund.

Siegfried H. Brauer, of Brauer Law Office, for amicus curiae Family Research Institute.

James D. McFarland, of McFarland Law Office, for amicus curiae Nonpartisan Family Coalition.

W. Craig Howell, of Domina Law, and Nory Miller and Nichole G. Berner, of Jenner & Block, L.L.C., for amici curiae American Psychological Association et al.

Susan Ann Koenig, of Law Office of Susan Ann Koenig, P.C., L.L.O., for amici curiae The Alliance for Children's Rights et al.

David T. Bydalek for amicus curiae Family First.

Rocky C. Weber, of Crosby Guenzel, L.L.P., and Robert J. Muise, of Thomas More Law Center, for amicus curiae The Nebraska Catholic Conference.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and INBODY, Judge.

PER CURIAM.

## NATURE OF CASE

B.P. and A.E. (collectively appellants) appeal from the order of the Lancaster County Court which denied the adoption petition jointly filed by appellants, two nonmarried persons, in which A.E. sought to adopt Luke, the minor biological son of B.P. The outcome of this appeal is controlled by the provisions of the Nebraska adoption statutes, Neb. Rev. Stat. § 43-101 et seq. (Reissue 1998 & Cum. Supp. 2000). The county court correctly concluded that on the record made in this case, Luke was not eligible for adoption due to the absence of a valid relinquishment by B.P. Accordingly, we affirm.

## STATEMENT OF FACTS

B.P. is the biological mother of Luke, a minor child born on December 20, 1997. Luke was conceived by artificial insemination using semen from an anonymous donor from the University of Nebraska Medical Center's genetic semen bank. Accordingly, Luke's biological father is unknown and is not a party to this action. For purposes of the Nebraska adoption statutes, Luke was born "out of wedlock."

On October 2, 2000, appellants jointly filed a verified petition in which A.E. sought to adopt Luke. B.P. indicated her "consent"

in the petition and in other supporting documents. B.P. did not file a relinquishment of her parental rights to Luke. To the contrary, she indicated on an affidavit attached to the petition that she did not intend to relinquish Luke. The only relief sought in this proceeding was the adoption of Luke by A.E.

A home study of appellants' household was conducted by an adoption specialist. The specialist recommended A.E.'s adoption of Luke be approved by the court.

On November 14, 2000, trial was held on the adoption petition. Appellants testified in support of the petition. A file, consisting of several documents including the home study, was admitted into evidence. No one entered an appearance, and no evidence was offered in opposition to the petition.

In an order filed December 1, 2000, the county court denied the petition for adoption. The county court concluded that Nebraska's adoption statutes do not provide for "two non-married persons to adopt a minor child, no matter how qualified they are." The county court also concluded that "the statu[t]es permit a single adult person to adopt a child after all necessary consents and relinquishments have been filed." Appellants timely appeal the county court's order denying the adoption petition.

## ASSIGNMENT OF ERROR

On appeal, appellants have assigned three errors, which we consolidate and restate as one: The county court erred in denying the adoption petition jointly filed by appellants in which A.E. sought to adopt Luke.

## STANDARD OF REVIEW

Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. *In re Guardianship of T.C.W.*, 235 Neb. 716, 457 N.W.2d 282 (1990); *In re Adoption of Leslie P.*, 8 Neb. App. 954, 604 N.W.2d 853 (2000). The matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed. *In re Adoption of Hemmer*, 260 Neb. 827, 619 N.W.2d 848 (2000); *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995). Interpretation of a statute presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion

irrespective of the decision made by the lower court. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001).

## ANALYSIS
### CONSTITUTIONAL CLAIMS NOT AT ISSUE

█ Appellants and the State devote considerable analyses in their briefs to the potential federal and state constitutional issues which may be implicated in this case. The constitutional issues addressed by appellants and the State on appeal were neither presented nor ruled on in the county court. We have stated that when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001); *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001). Accordingly, we do not consider the constitutional claims of appellants and the State and our analysis is limited to application of the Nebraska adoption statutes to this case.

### POSITIONS OF APPELLANTS AND STATE

Contending that the county court erred, appellants argue that the plain language of the adoption statute at § 43-101(1), which provides that "any minor child may be adopted by any adult person or persons," permits adoption of the minor child, Luke, by A.E.; the biological parent B.P. need not relinquish her parental rights in order for A.E. to adopt Luke; and the proposed adoption is in Luke's best interests. Appellants advance various constitutional arguments not considered here for the reasons outlined above.

Contending that the county court was correct, the State argues that the adoption statutes read as a whole do not provide that two nonmarried persons may jointly adopt a minor child and that the adoption statutes only provide for adoption of a child without the relinquishment of a biological parent's rights in the case of a stepparent where a spouse is the adopting party. The State advances various constitutional arguments not considered here for the reasons outlined above.

### ADOPTION IS STATUTORY

We have long recognized that "statutes providing for adoption are of civil and not common law origin. . . . Adoption proceedings

were unknown to the common law." (Citations omitted.) *In re Petition of Ritchie*, 155 Neb. 824, 827-28, 53 N.W.2d 753, 755 (1952). The adoption laws were first codified in 1897 and have been amended in 1943, 1984, 1985, and 1999. See, § 43-101 et seq.; *Neil v. Masterson*, 187 Neb. 364, 191 N.W.2d 448 (1971). We have stated that "the matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed." *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 918, 540 N.W.2d 554, 558 (1995). We have recently noted that it is inappropriate for this court to " 'extend the rights of adoption beyond the plain terms of the statutes.' " *In re Adoption of Hemmer*, 260 Neb. 827, 830, 619 N.W.2d 848, 851 (2000) (quoting *In re Petition of Ritchie, supra*). Although the numerous amendments to the adoption statutes could have been crafted with greater precision, the adoption statutes as a whole are cogent and workable. Accordingly, in the instant case, the plain terms and manner of procedure of the Nebraska adoption statutes must be followed.

### APPLICATION OF STATUTES TO THIS CASE

For an adoption to be valid under Nebraska's adoption statutes, the record must show the following factors: (1) the existence of an adult person or persons entitled to adopt, (2) the existence of a child eligible for adoption, (3) compliance with statutory procedures providing for adoption, and (4) evidence that the proposed adoption is in the child's best interests. Neb. Rev. Stat. § 43-101 et seq. See *In re Adoption of Kassandra B. & Nicholas B., supra*. The absence of any one of the necessary factors will preclude the adoption. In this case, Luke was not eligible for adoption, the county court determined that his adoption by A.E. was precluded on this basis, and we affirm on this basis.

The county court stated that "the statu[t]es permit a single adult person to adopt a child after all necessary consents and relinquishments have been filed." On this record, B.P. did not relinquish her parental rights to Luke, and therefore, he was not eligible for adoption by A.E. The county court's denial of the petition due to an absence of a relinquishment was correct. The county court also stated that Nebraska's adoption statutes do not provide for "two non-married persons to adopt a minor child, no

matter how qualified they are." Because A.E. alone sought to adopt Luke, the issue of whether two nonmarried persons are entitled to adopt was not presented to the county court in this case. Thus, that issue is not before this court on appeal, and we do not consider it.

Appellants argue that the county court erred in concluding that it could not grant the adoption of Luke by A.E. as an additional parent without a relinquishment of the parental rights of B.P. Appellants contend that "consent is an alternative to a relinquishment," brief for appellant at 12, and that where B.P. intended to preserve her parental rights upon the adoption of Luke by A.E., only B.P.'s consent, which was given, was required. Appellants refer the court to various cases in other states which concluded under the language of their adoption statutes that the biological parent need not relinquish parental rights in order to facilitate the adoption by a second adult to whom the biological parent was not married. See, e.g., *In re M.M.D.*, 662 A.2d 837 (D.C. 1995); *In re Petition of K.M.*, 274 Ill. App. 3d 189, 653 N.E.2d 888, 210 Ill. Dec. 693 (1995); *Adoption of Tammy*, 416 Mass. 205, 619 N.E.2d 315 (1993); *Matter of Adoption of Child by J.M.G.*, 267 N.J. Super. 622, 632 A.2d 550 (1993); *Matter of Adoption of Evan*, 153 Misc. 2d 844, 583 N.Y.S.2d 997 (1992); *Adoption of B.L.V.B.*, 160 Vt. 368, 628 A.2d 1271 (1993).

The State responds that the Nebraska adoption statutory scheme does not provide for adoption without relinquishment except in the case of a stepparent where "an adult husband or wife" seeks to "adopt a child of the other spouse." § 43-101(1). See, also, § 43-104(3). The State contends that stepparent adoption is the only explicit adoption scenario outlined in the Nebraska adoption statutes and that it is implicit in this statutorily permitted scenario that the existing parent intends to continue parenting and, therefore, need not relinquish his or her parental rights to the child in question. The State refers the court to various cases in other states which concluded under the language of their adoption statutes that the biological parent's parental rights would terminate upon adoption of the child by the nonmarried partner of the biological parent or that an adoption was precluded because the biological parent had not relinquished

parental rights. See, e.g., *Sharon S. v. Superior Court of San Diego County*, 93 Cal. App. 4th 218, 113 Cal. Rptr. 2d 107 (2001) (modified on denial of rehearing), *review granted* 116 Cal. Rptr. 2d 49, 39 P.3d 512 (2002); Adoption *of T.K.J.*, 931 P.2d 488 (Colo. App. 1996); *In re Baby Z.*, 247 Conn. 474, 724 A.2d 1035 (1999); *In re Adoption of Doe*, 130 Ohio App. 3d 288, 719 N.E.2d 1071 (1998); *In re Adoption of R.B.F.*, 762 A.2d 739 (Pa. Super. 2000); *In Interest of Angel Lace M.*, 184 Wis. 2d 492, 516 N.W.2d 678 (1994).

Section 43-101 is entitled "Children eligible for adoption." Section 43-101(1) provides as follows:

> Except as otherwise provided in the Nebraska Indian Child Welfare Act, any minor child may be adopted by any adult person or persons and any adult child may be adopted by the spouse of such child's parent in the cases and subject to sections 43-101 to 43-115, except that no person having a husband or wife may adopt a minor child unless the husband or wife joins in the petition therefor. If the husband or wife so joins in the petition therefor, the adoption shall be by them jointly, except that an adult husband or wife may adopt a child of the other spouse whether born in or out of wedlock.

With respect to the non-Indian minor child, Luke, who is the subject of this case, § 43-101 provides that "any minor child may be adopted." Elsewhere in chapter 43, however, numerous statutory substantive and procedural provisions are set forth which must be read together with § 43-101 and met before "any minor child," § 43-101, is in fact eligible for adoption and a decree of adoption may be properly entered. The statutes which provide for the consequences of adoption also bear on the issue of Luke's eligibility. Reading the various provisions of chapter 43 in pari materia, *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001), we conclude that with the exception of the stepparent adoption, the parent or parents possessing existing parental rights must relinquish the child before "any minor child may be adopted by any adult person or persons." Under Nebraska's statutory adoption scheme, the minor child, Luke, was not eligible for adoption by A.E. because B.P. had not relinquished him and the county court's reading of the statute was correct.

In *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 918, 540 N.W.2d 554, 558 (1995), we observed that as to the biological parent, "termination of his or her parental rights is the foundation of our adoption statutes." This pronouncement is reflected in the adoption statutes, which require relinquishment or termination prior to adoption, except when a stepparent adopts, and is further reflected in case law interpreting the adoption statutes.

Appellants argue that B.P.'s consent was the equivalent of relinquishment for purposes of the present case. We do not agree. Section § 43-104 provides that "no adoption shall be decreed unless written consents thereto are filed in the court of the county in which the person or persons desiring to adopt reside." Under § 43-104, such consent must be executed by

> (1) the minor child, if over fourteen years of age, or the adult child, (2) any district court, county court, or separate juvenile court in the State of Nebraska having jurisdiction of the custody of a minor child by virtue of divorce proceedings had in any district court, county court, or separate juvenile court in the State of Nebraska or by virtue of section 43-1203, and (3) both parents of a child born in lawful wedlock if living, the surviving parent of a child born in lawful wedlock, the mother of a child born out of wedlock, or both the mother and father of a child born out of wedlock as determined pursuant to sections 43-104.08 to 43-104.24, except that consent shall not be required of any parent who (a) has relinquished the child for adoption by a written instrument, (b) has abandoned the child for at least six months next preceding the filing of the adoption petition, (c) has been deprived of his or her parental rights to such child by the order of any court of competent jurisdiction, or (d) is incapable of consenting.

A consent to the proceedings by a parent or parents under § 43-104 is not required when a relinquishment has been executed. § 43-104(3)(a). A relinquishment would preclude the necessity of a consent. B.P. did not sign a relinquishment in this case, and her "consent" is not the equivalent of relinquishment.

We have stated that the consent granted by a court under § 43-104 does nothing more than permit the trial court to entertain

the adoption proceedings. *Klein v. Klein*, 230 Neb. 385, 431 N.W.2d 646 (1988). We read "consent" in § 43-104 to mean that the person, persons, or entity authorized to consent to the proceedings has agreed that the proposed adoption should be entertained by the trial court. See, also, *In re adoption of Kassandra B. & Nicholas B., supra.* In the instant case, B.P. "consented" to the proceedings and Luke is not ineligible for adoption due to a lack of such consent; however, B.P.'s consent to the proceedings was not tantamount to a relinquishment of parental rights.

The importance of "relinquishment" in the adoption statutes is apparent in § 43-109, which provides in relevant part:

> If, upon the hearing, the court finds that such adoption is for the best interests of such minor child or such adult child, a decree of adoption shall be entered. No decree of adoption shall be entered unless (a) it appears that the child has resided with the person or persons petitioning for such adoption for at least six months next preceding the entering of the decree of adoption, except that such residency requirement shall not apply in an adoption of an adult child, (b) the medical histories required by subsection (2) of section 43-107 have been made a part of the court record, and (c) the court record includes an affidavit or affidavits signed by the *relinquishing biological parent*, or parents if both are available, in which it is affirmed that, pursuant to section 43-106.02, prior to the relinquishment of the child for adoption, the *relinquishing parent* was, or parents if both are available were, (i) presented a copy or copies of the nonconsent form provided for in section 43-146.06 and (ii) given an explanation of the effects of filing or not filing the nonconsent form.

(Emphasis supplied.) The affidavit noted in § 43-109(c) refers to the form completed by the relinquishing parent or parents which indicates whether the parent or parents agree to the release of information about the relinquishing parent or parents to the adopted child.

Under § 43-109, "[n]o decree of adoption shall be entered unless . . . (c) the court record includes an affidavit [pertaining to whether or not information regarding the *relinquishing biological parent* should be released to the adopted person] signed by

the *relinquishing biological parent*." (Emphasis supplied.) Thus, under § 43-109, an adoption is not authorized unless the biological parent relinquishes the child and files the particular affidavit identified in the statute. Although the effect of a relinquishment in terms of finality is not the same in private adoptions as in agency adoptions, see *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980), and, notwithstanding that a relinquishment of parental rights in a private adoption is not totally extinguished until the child is adopted, *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991), a relinquishment is nevertheless required.

We have held that in a private adoption case where the prospective adoptive parent was not a spouse of the biological parent, there must be a relinquishment by the biological parent and the relinquishment must be valid in order for the child to become eligible for adoption. See *Gray v. Maxwell, supra* (stating that where biological mother was paid sum of money in excess of legitimate expenses of confinement and birth in consideration for executing relinquishment, such relinquishment was against public policy and was invalid). In the instant case, B.P. swore in the affidavit required under § 43-109 that "I do not intend to relinquish [Luke] for the ultimate purpose of adoption." Having refused to relinquish Luke, B.P. is not a "relinquishing biological parent." The affidavit B.P. signed did not meet the requirements of § 43-109. Therefore, Luke was not eligible for adoption and "[n]o decree of adoption shall be entered."

The provisions contained in the adoption statutes found at §§ 43-110 and 43-111, pertaining to the consequences of adoption, further buttress our conclusion that "termination" of existing parental rights is the foundation of our adoption statutes. See *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 540 N.W.2d 554 (1995). Section 43-110, entitled "Decree; effect as between parties," provides as follows:

> After a decree of adoption is entered, the usual relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between such adopted child and the person or persons adopting such child and his, her or their kindred.

We have stated that the "purpose of § 43-110 is to terminate any relationship which existed between the natural parent and the

child and to create a new relationship between the adoptive parent and the child." *In re Estate of Luckey. Bailey v. Luckey*, 206 Neb. 53, 56, 291 N.W.2d 235, 237-38 (1980).

Section 43-111, entitled "Decree; effect as to natural parents," provides:

> Except as provided in section 43-106.01 and the Nebraska Indian Child Welfare Act, after a decree of adoption has been entered, the natural parents of the adopted child shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such adopted child or to his or her property by descent and distribution.

We have read this section as requiring a relinquishment prior to a private placement adoption. *Gray v. Maxwell, supra.*

Thus, under Nebraska's adoption statutes, the legal consequence of an adoption is that "the natural relation of child and parent shall thereafter exist between such adopted child and the person or persons adopting such child," § 43-110, and the adoption serves to relieve the natural parents of "all parental duties toward and all responsibilities for such child and have no rights over such adopted child," § 43-111. The pleadings in this case indicate that only A.E. sought to adopt Luke. Had the county court permitted the adoption of Luke by A.E., a new relationship between A.E. and Luke would have been created pursuant to § 43-110, and, as an unintended consequence, B.P. would have been relieved of her natural rights to Luke pursuant to § 43-111. In the instant case, B.P. manifestly did not want the consequences ordained by § 43-111 to attach had the county court granted the petition for adoption of Luke by A.E.

In order for A.E. to adopt Luke, he must be eligible for adoption. With the exception of stepparent adoptions, which are statutorily permitted, the Nebraska adoption statutes provide that an eligible child is one over whom parental rights have been relinquished or terminated and with respect to whom, upon entry of the adoption decree, a new relationship between the child and adoptive parent is created and the natural parents are relieved of all parental duties. In the instant case, Luke was not eligible for adoption by A.E. because B.P. had not relinquished her parental rights, and the county court's determination that the

absence of such relinquishment precluded adoption of Luke by A.E. is not error.

Appellants urge this court to ignore the language of § 43-111 and to interpret the adoption statutes as permitting the adoption of Luke by A.E. as a parent in addition to the existing parent, B.P., without consequence to the parental rights of B.P. Appellants acknowledge that the exception providing for a stepparent adoption under § 43-101 permits the addition of a stepparent without relieving the natural parent of rights which would otherwise result under § 43-111. Appellants urge this court to read into the adoption statutes an additional exception for second-parent adoptions and to disregard the fact that the adoption statutes explicitly provide for stepparent adoptions and do not explicitly provide for second-parent adoptions.

The adoption statutes permit only the paradigms which are explicit. With the exception of the statutory stepparent adoption scenario outlined in § 43-101, the adoption statutes neither provide for nor expressly designate who may adopt. When construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible, rather than an absurd, result in enacting a statute. *Fay v. Dowding, Dowding,* 261 Neb. 216, 623 N.W.2d 287 (2001). Because the Nebraska adoption statutes explicitly provide for a stepparent adoption following which the existing parent will inherently continue raising the child, we conclude it would be an absurd result under the statutes as written to require relinquishment by the existing parent in the explicit statutorily permitted case of a stepparent adoption. As compared to a stepparent adoption, however, it is not inherent in § 43-101 that the "person or persons" seeking to adopt will necessarily be in addition to the existing parent who will continue to raise the child. Reading the adoption statutes in their entirety, it is clear that aside from the stepparent adoption scenario, the parents' parental rights must be terminated or the child must be relinquished in order for the child to be eligible for adoption by "any adult person or persons" under § 43-101.

For the reasons given above, we conclude that the county court did not err when it concluded on this record that A.E. could not adopt Luke for the reason that Luke was not eligible for adoption because B.P. had not relinquished her parental rights to him.

## CONCLUSION

Adoption is statutory in Nebraska, and the outcome of this case is controlled by the Nebraska adoption statutes, § 43-101 et seq. The constitutional issues which may be implicated in this case were neither presented to nor ruled upon at trial and are not considered for the first time on appeal.

For an adoption to be properly decreed, the following factors must be met: There must be a person or persons entitled to adopt, a child must be eligible for adoption, the procedures and terms of the Nebraska adoption statutes must be followed, and the adoption must be in the child's best interests. In this case, because Luke was not eligible for adoption, a decree could not be properly entered, the denial of the petition on this basis was correct, and we need not consider the existence of the other factors.

According to the record, appellants, two nonmarried adults, jointly petitioned the county court of Lancaster County. The only relief sought in the proceeding was the adoption of Luke, B.P.'s biological minor son, by A.E. B.P. did not sign a relinquishment of Luke.

The county court ruled that Nebraska's adoption statutes do not provide for "two non-married persons to adopt a minor child, no matter how qualified they are." The issue of whether two nonmarried persons are entitled to adopt was not before the county court nor before this court on appeal.

The county court also concluded that a single adult person could adopt only when the child had been relinquished and that therefore, since B.P. had not relinquished Luke, A.E. could not adopt Luke because he was not eligible for adoption. With the exception of a stepparent adoption which is explicitly provided for in the Nebraska adoption statutes and for which no relinquishment is required, when the parent or parents' rights have not been terminated, a child must be relinquished by the existing parent or parents to be eligible for adoption "by any adult person or persons." § 43-101(1). Because B.P. had not relinquished her parental rights to Luke, he was not eligible for adoption by A.E. Because Luke was not eligible for adoption due to the absence of a relinquishment, on the record in this case, the county court did not err in denying the petition for adoption.

AFFIRMED.

WRIGHT, J., not participating.

GERRARD, J., dissenting.

The holding of the majority opinion is that Nebraska law requires a biological parent to relinquish his or her parental rights in order for a child to be eligible for adoption by a party other than the biological parent's spouse. The majority bases this determination in part on the conclusion that A.E. cannot adopt Luke without extinguishing B.P.'s parental rights. I disagree. In my view, the dispositive issue in this case is whether Nebraska law permits a second-parent adoption when the adoptive parent is not married to the minor child's biological parent. I believe that it does and would therefore reverse the judgment of the county court.

## COUNTY COURT JUDGMENT

First, I disagree with the majority's representation of the county court's order denying the petition for adoption. The majority states that "Luke was not eligible for adoption, the county court determined that his adoption by A.E. was precluded on this basis, and we affirm on this basis." The majority further states, "[t]he county court also concluded that a single adult person could adopt only when the child had been relinquished and that therefore, since B.P. had not relinquished Luke, A.E. could not adopt Luke because he was not eligible for adoption."

The majority indicates that the county court denied the adoption petition on two alternative bases: (1) Luke was a child ineligible for adoption because B.P.'s relinquishment of Luke was ineffective and (2) two nonmarried persons are not permitted to adopt under Nebraska law. The county court's order, however, states the following:

> It is this Judge's opinion that everyone with the potential to successfully parent a child in foster care or adoption should be entitled to a fair and equal consideration regardless of sexual orientation or differing lifestyle. The statutes in effect in Nebraska say different. I believe the statues [sic] permit a single adult person to adopt a child after all necessary consents and relinquishments have been filed; and in such cases the consent acts also as a relinquishment, or a spouse may adopt upon consent of the other spouse.

> There is no provision in Nebraska law that allow [sic] two non-married persons to adopt a minor child, no matter how qualified they are to be an adoptive parent.
>
> The petition for adoption is denied.

I cannot read the county court's order to support the construction placed upon it by the majority. The county court simply did not make a determination regarding B.P.'s relinquishment of Luke, or lack thereof. The sole basis stated for the county court's denial of the petition was the county court's conclusion that an unmarried couple cannot adopt under Nebraska law.

## NECESSITY OF RELINQUISHMENT

Even if the county court had reached the issue whether B.P.'s relinquishment of Luke was valid, I do not agree with the majority's affirmance of the county court's judgment on that basis. In my opinion, the Nebraska adoption statutes do not support the majority's conclusion that B.P. was required to relinquish Luke before Luke was eligible for adoption by A.E.

Neb. Rev. Stat. § 43-102 (Cum. Supp. 2000) provides, in relevant part, that "any person or persons desiring to adopt a minor child or an adult child shall file a petition for adoption signed and sworn to by the person or persons desiring to adopt. The consent or consents required by sections 43-104 and 43-105 . . . shall be filed prior to the hearing." Neb. Rev. Stat. § 43-104 (Cum. Supp. 2000) in turn provides, in relevant part, that

> no adoption shall be decreed unless written consents thereto are filed in the court of the county in which the person or persons desiring to adopt reside and the written consents are executed by . . . the mother of a child born out of wedlock . . . except that consent shall not be required of any parent who (a) has relinquished the child for adoption by a written instrument . . . .

This section establishes a distinction between a consent and a relinquishment. Moreover, the statute clearly contemplates that there will be circumstances under which there is a consent to an adoption, but not a relinquishment. The statute states that a consent is required *except* when the biological parent has executed a relinquishment. If a relinquishment by a biological parent is

necessary in all cases, then the statutory language requiring consent in all other cases would be a redundancy.

The effect of a parental relinquishment is set forth in Neb. Rev. Stat. § 43-106.01 (Reissue 1998), which provides in relevant part:

> When a child shall have been relinquished by written instrument . . . to the Department of Health and Human Services or to a licensed child placement agency . . . the person so relinquishing shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such child.

In addition, this court has held that in the case of private adoptions, a biological parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment. *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991). See, also, *Gomez v. Savage*, 254 Neb. 836, 580 N.W.2d 523 (1998).

While § 43-106.01 and *Yopp, supra,* establish the legal effect of a voluntary relinquishment, they do not, however, provide that a relinquishment is required from a biological parent for a petition for a decree of adoption to be considered when that biological parent is one of the parties to the adoption petition. In the search for such a requirement, the majority relies on Neb. Rev. Stat. § 43-109 (Cum. Supp. 2000), which provides in relevant part:

> If, upon the hearing, the court finds that such adoption is for the best interests of such minor child or such adult child, a decree of adoption shall be entered. No decree of adoption shall be entered unless (a) it appears that the child has resided with the person or persons petitioning for such adoption for at least six months next preceding the entering of the decree of adoption . . . (c) the court record includes an affidavit or affidavits signed by the relinquishing biological parent, or parents if both are available, in which it is affirmed that, pursuant to section 43-106.02, prior to the relinquishment of the child for adoption, the relinquishing parent was, or parents if both are available were, (i) presented a copy or copies of the nonconsent form provided for in section 43-146.06 and (ii) given an explanation of the effects of filing or not filing the nonconsent form.

The majority reads this section to imply that a relinquishment from a biological parent must be present in all cases. However, there are clearly circumstances in which there will not be such a relinquishment. The majority acknowledges that there need be—indeed, can be—no relinquishment when the biological parent's parental rights have been terminated and concludes that relinquishment is unnecessary in the case of a spousal second-parent adoption. There can also obviously be no relinquishment when the child's biological parents are deceased or the child has been abandoned. Because the Legislature could not have been unaware of these situations, it is evident that the Legislature could not have intended § 43-109 to require an affidavit from a relinquishing parent where there is no relinquishing parent. While § 43-109 requires that the record include affidavits from the relinquishing parents if there are relinquishing parents, the statute does not address when relinquishment is and is not necessary. Simply put, if there is a statutory source for the majority's conclusion that a relinquishment from a biological parent is required before a child is eligible for adoption, that source is not § 43-109.

The majority further relies on *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980), to support the conclusion that relinquishment is required. *Gray* does not support the construction placed upon it by the majority. In *Gray*, the biological mother brought a habeas corpus action seeking to regain custody of her minor child. The biological mother alleged that the relinquishment she had executed was invalid. The district court agreed and granted habeas relief. On appeal, we concluded that the biological mother's relinquishment had been given for consideration beyond the payment of her medical expenses and that the promise to pay for the child was against public policy and vitiated the relinquishment. *Id.* We remanded the cause for a hearing on the fitness of the biological mother. *Id.*

The majority describes *Gray* as holding that "in a private adoption case where the prospective adoptive parent was not a spouse of the biological parent, there must be a relinquishment by the biological parent and the relinquishment must be valid in order for the child to become eligible for adoption." Our opinion in *Gray* contains no basis for this assertion.

Nebraska law provides that an adoption cannot go forward without the consent of the biological parent or a substitute for that consent, one possible form of which is relinquishment of parental rights. See § 43-104. In *Gray, supra*, the relinquishment was not valid and the biological mother obviously did not consent to the adoption. The question whether relinquishment was a jurisdictional prerequisite, with or without the consent of the biological parent, was not at issue. Not only does *Gray* not support the construction placed upon it by the majority, but *Gray* is inapposite to the instant case.

In fact, the language used throughout the statutes and this court's jurisprudence dictate a conclusion contrary to that of the majority: *Either* a valid relinquishment *or* a consent to adoption suffices to permit a county court to entertain an adoption proceeding. See, e.g., Neb. Rev. Stat. §§ 43-107 (Cum. Supp. 2000) and 43-104.09, 43-146.01, 43-164, and 43-1411 (Reissue 1998) (statutes referring to "consent or relinquishment" for purposes of adoption). Although "or" is not always used in the disjunctive, it is usually so considered, and that is its commonly accepted meaning. *State ex rel. Finigan v. Norfolk Live Stock Sales Co., Inc.*, 178 Neb. 87, 132 N.W.2d 302 (1964).

Based on this statutory language, we stated in *In re Adoption of Kassandra B. & Nicholas B.*, 248 Neb. 912, 922, 540 N.W.2d 554, 560 (1995), that "[c]hildren are not legally free for adoption unless both biological parents consent or one of the statutory exceptions to the need for their consent has been met." See, also, e.g., *Kellie v. Lutheran Family & Social Service*, 208 Neb. 767, 305 N.W.2d 874 (1981); *Batt v. Nebraska Children's Home Society*, 185 Neb. 124, 174 N.W.2d 88 (1970) (referring to requirement of "consent or relinquishment"). Thus, our cases have followed the general rule that while parental consent to an adoption of one's biological child is normally required for a valid adoption, such consent may not be required of a parent who has forfeited his or her parental rights by voluntary relinquishment. See 2 Am. Jur. 2d *Adoption* § 74 (1994).

This court's jurisprudence has previously been consistent with the scheme established by the adoption statutes, which permit an adoption to proceed if the biological parents consent or an exception to the consent requirement is present, with

relinquishment of parental rights serving, not as an independent requirement, but simply as an exception to the consent requirement. If a biological parent relinquishes his or her parental rights, that relinquishment is immediately effective and irrevocable. See *Gomez v. Savage*, 254 Neb. 836, 580 N.W.2d 523 (1998). If there is no relinquishment but there is consent to the adoption, then the adoption proceeds to entry of the decree of adoption, at which point, the parental rights of the biological parent are, under most circumstances, extinguished. See Neb. Rev. Stat. §§ 43-106 and 43-111 (Reissue 1998). The statutes permit adoption without a relinquishment of parental rights where the biological parent is a party to the adoption petition, so long as the biological parent consents to the adoption or a substitute for that consent is provided. The majority's creation of a "relinquishment requirement" is contrary to the explicit language of the statutes and the dictates of our established jurisprudence.

Furthermore, the majority expressly disclaims any ruling on the issue whether appellants could adopt "jointly" if B.P. actually relinquished her parental rights. The majority thus appears to leave the door open for appellants to effectively accomplish a second-parent adoption, but only by virtue of an unwieldy and illogical process. If the end result of an unmarried second-parent adoption is permitted, then it makes little sense to insist that the biological parent "relinquish" his or her rights—when the parent has no real intention of doing so—only to further require that he or she ask in the petition for adoption to have those rights restored by the decree when they never should have been relinquished in the first place. Not only would this rule value form over substance, but it would expose the biological parent to a substantial risk. A relinquishment is irrevocable from its execution, and a conditional relinquishment is invalid. See, *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991); *Auman v. Toomey*, 220 Neb. 70, 368 N.W.2d 459 (1985). The mandate of relinquishment prior to adoption would require the biological parent to surrender his or her rights without any assurance that those rights would be restored. Since a biological parent is unlikely to assume that risk, a mandate of "relinquishment" in effect precludes many such adoptions from taking place.

Moreover, there is no purpose to requiring a relinquishment to be given under such circumstances. Notably, the majority opines regarding the "importance of 'relinquishment' in the adoption statutes," but at no point endeavors to justify *why* relinquishment may be important, or explain how the purposes of the adoption statutes are advanced by the majority's interpretation of the statutes and application of that interpretation to the instant case.

For instance, it is certainly appropriate to require that a parent expressly relinquish parental rights where an adoption is intended to completely sever the child's relationship with his or her birth parent and provide the child with a new family. Refusing to allow a parent to consent to an adoption while maintaining his or her own parental status, however, does not further the important goal of finality. Unlike other adoptions, second-parent adoptions are not subject to later attack by the consenting parent because that consenting parent neither has lost parental rights nor wishes to lose those rights through the adoption. See, generally, Theresa Glennon, *Binding the Family Ties: A Child Advocacy Perspective on Second-Parent Adoptions*, 7 Temp. Pol. & Civ. Rts. L. Rev. 255 (1998). It simply serves no legitimate purpose to require a biological mother to relinquish her parental rights prior to the entry of a second-parent adoption under these circumstances.

That, however, begs consideration of the other justification for the majority's holding: the conclusion that the termination provision of § 43-111 is inescapable unless the parties are married. I now turn to that analysis.

### SECOND-PARENT ADOPTION BY UNMARRIED ADOPTIVE PARENT

The majority further bases its holding on the conclusion that B.P. must "relinquish" her parental rights because A.E. cannot adopt Luke without extinguishing B.P.'s parental rights. I also disagree with this conclusion, as an appropriate interpretation of Nebraska's adoption statutes reveals no basis for mandating this result.

Neb. Rev. Stat. § 43-101(1) (Cum. Supp. 2000) provides:

Except as otherwise provided in the Nebraska Indian Child Welfare Act, any minor child may be adopted by any adult

person or persons and any adult child may be adopted by the spouse of such child's parent in the cases and subject to sections 43-101 to 43-115, except that no person having a husband or wife may adopt a minor child unless the husband or wife joins in the petition therefor. If the husband or wife so joins in the petition therefor, the adoption shall be by them jointly, except that an adult husband or wife may adopt a child of the other spouse whether born in or out of wedlock.

Section 43-111 provides:

Except as provided in section 43-106.01 . . . after a decree of adoption has been entered, the natural parents of the adopted child shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such adopted child or to his or her property by descent and distribution.

In construing these statutes, the majority ignores the long-established rule that the adoption statutes should be given a liberal rather than a strict construction due to the humanitarian aspects and purposes of such statutes. See *Neil v. Masterson*, 187 Neb. 364, 191 N.W.2d 448 (1971). The tendency of all our decisions has been toward a liberal construction of the law in all cases of adoption. *In re Estate of Taylor*, 136 Neb. 227, 285 N.W. 538 (1939).

"The adoption statute is a humane provision, which looks to the interest of children primarily. This is its controlling idea and policy. Therefore, every reasonable intendment should be indulged, in case of doubt, in the line of promoting that object. Other courts have taken the same view, but, if it were otherwise, our duty to carry out an obvious legislative intent would be the same. . . . It has made, and is making, a multitude of happy homes, happy parents, happy children, and valuable members of society, and no narrow construction should be indulged in that will tend to defeat a result so obviously intended and in every way so beneficial."

*Ferguson v. Herr*, 64 Neb. 649, 665, 94 N.W. 542, 545 (1903). The best interests of the child should be kept at the forefront of such an inquiry. See *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991).

With that understanding in mind, the statutory scheme as a whole serves to advance two fundamental purposes: (1) ensuring that biological parents are informed of their rights and consent to the adoption proceedings and (2) providing for the best interests of the child. See, e.g., § 43-109. The majority analyzes the wrong issue: the question is not whether the statutes specifically permit a second-parent adoption where the adoptive parent and biological parent are not married, but instead whether the statutes explicitly prohibit such an adoption.

The statutes provide, in extremely broad language, that "any minor child may be adopted by any adult person or persons," § 43-101(1), if the county court "finds that such adoption is for the best interests of such minor child," § 43-109(1). Our Legislature, like many others, has declined to make categorical assumptions about what adoptive parents or familial relationships are preferable and has instead left it to the county court to conduct a fact-specific inquiry into whether a particular adoption is in the best interests of the child. As stated by one commentator:

> [W]hat is unmistakably clear from looking at adoption statutes is the legislative delegation of decision-making power in individual cases to judges. Compelling functional justifications support this institutional design. Adoption law is built on a premise of delegation: the legislature grants broad powers to courts to make case by case decisions and to decide what arrangement is in a child's best interests. This sort of delegation, of course, goes beyond the adoption context and describes much of family law affecting children, such as custody and visitation decisions.
>
> . . . The highly individualized and proceduralized fact-finding procedures used by judges enable them to engage closely with the specific circumstances in which children find themselves.

Jane S. Schacter, *Constructing Families in a Democracy: Courts, Legislatures and Second-Parent Adoption*, 75 Chi.-Kent L. Rev. 933, 942-43 (2000).

It is plainly inconsistent with such a scheme to interpret § 43-111 as requiring the extinguishment of a biological parent's parental rights under circumstances such as those presented in this case. As stated by the Supreme Judicial Court of Massachusetts:

> The purpose of the termination provision is to protect the security of the child's newly-created family unit by eliminating involvement with the child's natural parents. Although it is not uncommon for a natural parent to join in the adoption petition of a spouse who is not the child's natural parent . . . the statute has never been construed to require the termination of the natural parent's legal relationship to the child in these circumstances. . . . Reading the adoption statute as a whole, we conclude that the termination provision . . . was intended to apply only when the natural parents (or parent) are not parties to the adoption petition.

(Citations omitted.) *Adoption of Tammy*, 416 Mass. 205, 216, 619 N.E.2d 315, 321 (1993). The termination provision was "designed as a shield to protect new adoptive families, [but] was never intended as a sword to prohibit otherwise beneficial intrafamily adoptions by second parents." *Matter of Jacob*, 86 N.Y.2d 651, 669, 660 N.E.2d 397, 405, 636 N.Y.S.2d 716, 724 (1995). Compare *In re Estate of Luckey. Bailey v. Luckey*, 206 Neb. 53, 291 N.W.2d 235 (1980).

The majority implicitly acknowledges as much when it concedes that § 43-111 is not operative when the adoptive parent is the spouse of the child's biological parent. This concession is made, however, despite the fact that when read literally, § 43-111 sets forth no exception to the termination provision, regardless of whether the adoptive parent is married to the biological parent. The majority makes little effort to explain why an exception is warranted under one circumstance, but not the other. Notably absent from the majority's analysis is any consideration of what this court has previously held to be the primary interpretive principle applicable to the adoption statutes: the best interests of children. By prioritizing the relationship between the adults, the majority relegates to the shadows the relationship most directly at issue—that of parent and child. We are not called upon to pass judgment on the relationship between A.E. and B.P. or to make a policy determination regarding the advantages or disadvantages of second-parent adoptions in general. If any policy determination is to be made in that regard, it is a decision for the Legislature to make within the bounds of the constitution—and the Legislature has thus far been silent on the question.

The adoption statutes, properly construed, permit any person or persons, married or unmarried, to petition the county court for a decree of adoption, but require them to obtain the necessary consents and to show that such adoption is in the best interests of the child. There is no bar in the statutes to unmarried couples seeking to jointly adopt, or seeking a second-parent adoption, to both join in such a petition. In the case of a second-parent adoption, whether the couple is married or not, when the adoption is shown to be in the best interests of the child, the county court may specify that both parties to the petition are decreed to be the parents of the minor child; that is, permit the adoptive parent to adopt the child while allowing the biological parent to retain all his or her parental rights and obligations. This result is consistent with the statutory language; is the most flexible and sensible approach to interpreting statutes that will be applied to a wide variety of unforeseeable circumstances; and, most importantly, maintains the longstanding rule that the adoption statutes must be reasonably interpreted to effectuate the best interests of adoptive children.

Given our long-established principle of interpreting the adoption statutes liberally to effectuate the best interests of the child, I conclude that there must be an unequivocal indication of legislative intent to abandon the best interests of the child standard before limiting who can be an adoptive parent. The Nebraska adoption statutes evidence no such unequivocal intent. I would hold that the statutes permit a second-parent adoption of a minor child by an adoptive parent who is not married to the child's biological parent, so long as the biological parent consents to the adoption and the adoption is found to be in the child's best interests.

## CONCLUSION

Despite my disagreement with the majority's analysis, I agree with the majority insofar as it concludes that the constitutional claims raised in the parties' briefs are not pertinent to the dispositive issues on appeal. In spite of the efforts of the parties and various amici to turn this appeal into a forum for or against gay and lesbian rights, the question before this court is one of statutory interpretation, and that analysis is not affected by the gender

or sexual orientation of the biological or prospective adoptive parent. While some of the cases cited above involved circumstances, like those of the instant case, in which the biological and prospective adoptive parent were of the same gender, I emphasize that Nebraska's statutes make no distinction on that point; my analysis—and that of the majority—is not premised on any distinction involving the gender and sexual orientation of the couple seeking a second-parent adoption. That distinction or other distinctions (if any are to be made within the bounds of the constitution) are the province of the Legislature, and that body has not spoken on the issue.

I would reverse the judgment of the county court dismissing the adoption petition, because I believe the county court erroneously determined that it did not have the statutory authority to enter the requested adoption decree. Because the county court did not decide whether the adoption sought was in the best interests of Luke, I would remand the cause to the county court for further proceedings relating to that issue. I respectfully dissent.